```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
 2                  FAYETTEVILLE DIVISION
     GARLAND D. MURPHY, III, M.D. and    )
 3   PHYLLIS MURPHY, Individually and     )
     on behalf of all others             )
 4   similarly situated,                 )
                                         )
 5       Plaintiffs,                     ) CASE NO.
                                         ) 5:17-CV-5035
 6   VS.                                 )
                                         )
 7   GOSPEL FOR ASIA, INC., GOSPEL       )
     FOR ASIA-INTERNATIONAL, K.P.        )
 8   YOHANNAN, GISELA PUNNOSE, DANIEL    )
     PUNNOSE, DAVID CARROLL, and PAT     )
 9   EMERICK,                            )
                                         )
10       Defendant.                      )

11

12           TRANSCRIPT OF TELEPHONE CONFERENCE

13        BEFORE THE HONORABLE TIMOTHY L. BROOKS

14           September 22, 2017; 10:36 a.m.

15              FAYETTEVILLE, ARKANSAS

16

17

18

19

20

21

22  Proceedings recorded in realtime via machine shorthand.

23  _____

                  Dana Hayden, CCR, RMR, CRR
24           Federal Official Court Reporter
                  35 East Mountain Street
25            Fayetteville, Arkansas 72701
```

```
 1              APPEARANCES (ALL VIA TELECONFERENCE)

 2   FOR THE PLAINTIFFS:

 3        Messrs. Woody Bassett and James M. Graves
          Bassett Law Firm
 4        221 North College Avenue
          Fayetteville, Arkansas 72701
 5        (479) 521-9996
          (479) 521-9600 Fax
 6        wbassett@bassettlawfirm.com
          jgraves@bassettlawfirm.com
 7
          Messrs. Marc R. Stanley and Martin Woodward
 8        Stanley Law Group
          6116 North Central Expressway, Suite 1500
 9        Dallas, Texas 75206
          (214) 443-4300
10        marcstanley@mac.com
          mwoodward@stanleylawgroup.com
11
          Mr. Thomas W. Mills Jr.
12        Mills Williams LLP
          5910 N. Central Expressway, Suite 980
13        Dallas, Texas 75206
          (214) 265-9265
14        tmills@millsandwilliams.com

15
     FOR THE DEFENDANTS:
16
          Mr. John T. Adams
17        Shults & Brown, LLP
          200 West Capitol Avenue, Suite 1600
18        Little Rock, Arkansas 72201-3637
          (501) 375-2301
19        (501) 375-6861 Fax
          Jadams@shultslaw.com
20
          Messrs. Robert Thompson Mowrey and Paul F. Schuster
21        Ms. Harriet Ellan Miers
          Locke Lord LLP
22        2200 Ross Avenue, Suite 2800
          Dallas, Texas 75230
23        (214) 740-8450
          hmiers@lockelord.com
24        rmowrey@lockelord.com
          pschuster@lockelord.com
25
```

1          THE COURT:  All right.  We are on the record in

2    the matter that has been styled Garland D. Murphy and

3    Phyllis Murphy, plaintiffs, both individually, and they

4    seek to bring their causes of action on behalf of a

5    putative class of similarly situated individuals against

6    the defendants, which consist of some corporate entities

7    and principal individuals behind those entities,

8    including entities known as Gospel for Asia, Inc. and

9    Gospel For Asia-International.

10          Our assigned case number is 5:17-CV-5035.  The

11    matter comes before the Court today for purposes of a

12    telephone conference as it relates to a brewing

13    discovery dispute.

14          Via telephone appearing on behalf of the

15    plaintiffs today would include -- well, let me just kind

16    of do a listing of who all is appearing.  If you'd just

17    say that you're present and we know that you're there,

18    that would be helpful.

19          So appearing on behalf of plaintiffs, we should

20    have Marc Stanley?

21          MR. STANLEY:  Here, sir.

22          THE COURT:  And Martin Woodward?

23          MR. WOODWARD:  Here, your Honor.

24          THE COURT:  And then we also have appearing

25    Woody Bassett?

1        MR. BASSETT:  Here, your Honor.

2        THE COURT:  James Graves?

3        MR. GRAVES:  Here, your Honor.

4        THE COURT:  And Tom Mullis?

5        MR. MILLS:  Yes, your Honor.  It's Mills,

6    M-i-l-l-s.

7        THE COURT:  All right.  Sorry about that.

8        Appearing on behalf of the defendants, we have

9    Rob Mowrey?

10       MR. MOWREY:  Yes, your Honor.

11       THE COURT:  Paul Schuster?

12       MR. SCHUSTER:  Yes, your Honor.

13       THE COURT:  John Adams?

14       MR. ADAMS:  Here, your Honor.

15       THE COURT:  And Harriet Miers?

16       MS. MIERS:  Yes, your Honor.

17       THE COURT:  All right.  Well, this is a case in

18   which the plaintiffs have essentially alleged that over

19   a period of time, they and others similarly situated

20   were fraudulently induced to make donations to the

21   defendant charitable entities.

22       Their lawsuit sets forth causes of action

23   sounding in RICO violations, common law fraud, statutory

24   fraud pursuant to the Arkansas Deceptive Trade Practices

25   Act, and a common law claim for unjust enrichment.

1          The defendants deny that they have fraudulently

2    induced anything and explain that there are completely

3    innocuous explanations to address any and all concerns

4    about the disposition of any donations that it has

5    received.

6          The Court scheduled this telephone conference

7    today, and its reasons for doing so are a little bit

8    different than why we would normally be doing this and,

9    in some respects, perhaps a little premature.

10         Last week the Court was notified of a discovery

11   dispute by the defendants when they received a set of

12   numerous requests for admissions, some -- I don't

13   know -- 170 or 200, something like that, requests for

14   admissions, and they felt like that was inappropriate.

15   They had asked the plaintiffs to withdraw those

16   requests, and that request was denied.  So that was the

17   Court's first learning of this dispute.

18         The Court at that point was in the process of

19   getting a telephone conference scheduled; but before we

20   had a chance to do so, the Court was informed that the

21   plaintiffs had decided to formally withdraw those

22   requests, so the Court understood that may have resolved

23   the issue.

24         But then earlier this week, on either Monday or

25   Tuesday, the Court learned that the -- while the

1   plaintiffs did withdraw their 170-something requests for

2   admissions, they were also of a mind to file a motion

3   for leave and obtain the Court's permission to formally

4   propound those very same requests.

5          So somewhere along the way, the Court decided

6   to hold a telephone conference to air out all these

7   positions; and then at some other point in time, the

8   motion for leave was actually filed, and the defendants

9   have not yet had an opportunity to file a formal

10  response to that motion.

11         So that's why I say that any formal ruling on

12  that motion may be a little bit premature, but we also

13  have another provision in our case management order that

14  requires the parties to have a telephone conference with

15  the Court before filing a discovery motion.  So I am

16  still of the opinion that, given all of that, it is

17  appropriate that we kind of air out where things stand.

18  And I'd like to hear some input from each side and then

19  perhaps the Court can give some guidance that will help

20  resolve the impasse at the moment.

21         I have read the plaintiffs' motion.  I don't

22  have the benefit of the defendants' response, but the

23  Court also solicited a letter from counsel that kind of

24  outline their positions, and I do have the benefit of

25  the defendants' response in the form of the letter that

1  was sent to the Court.

2        My understanding of the dispute is that there

3  were -- since we were here at a case management

4  conference, the plaintiffs have propounded at least two

5  separate sets of formal discovery, in response to which

6  the plaintiffs have received some amount of information;

7  and it could be that they have received a great deal of

8  information, but it would appear, as of this point, that

9  they are trying to refine the information that they seek

10  to a more usable format and that is where they are being

11  met with some reluctance.

12        The Court understands that the central, or

13  core, fact issue for the case or for the trial is going

14  to be whether the defendants spent the financial and

15  charitable donations that it had received for the

16  purposes that had been expressly designated by the

17  defendants' donors; and through the course of discovery

18  to date, as I understand it, the defendants have

19  informed the plaintiffs and have provided a certain

20  amount of information and documents that establish 179

21  different donation codes that categorize various

22  purposes of donations.  And the plaintiffs report that

23  the defendants have objected to certain other

24  disclosures on various grounds, including overbreadth

25  and international law concerns and various purposes.

1          So as I understand it, the plaintiffs are
2   seeking, in this third set of discovery, that they would
3   like to propose requests for admissions.  It is the same
4   five- or six-part request for admission and document
5   production that corresponds to each of the 179 different
6   donation purpose codes that have been -- that they have
7   been provided a certain amount of information about from
8   the defendants.
9          The defendants object saying that the sheer
10  volume of what's being requested is not appropriate.
11  They also object in as much as they contend -- and they
12  cite a fair amount of authority -- that what the
13  plaintiffs are seeking to do with these requests for
14  admissions really goes against the purpose and intent of
15  the types of discovery to be sought and achieved through
16  Rule 36 discovery.
17         The plaintiff has cited cases to counter that
18  and contend that it, you know, goes to the very core
19  issue of what they are trying to establish and really
20  goes to the core of their case; and if they can't get
21  information as to these points, then they're hamstrung
22  in proving their case.
23         So that's where we are.  That's what my
24  understanding of the dispute is.  I'm going to give each
25  side an opportunity to either help me better understand

1   where the actual friction is or give further support and

2   argument to your position and then we can just kind of

3   have a conversation about that.

4           Mr. Stanley, I'll let you go first.

5           MR. STANLEY:  Thank you, your Honor.  First of

6   all, I want to tell you how we got here a little bit and

7   that is we forgot that in the hearing on May 16, you did

8   say on Page 73 that you would -- there would be 25

9   requests for admissions per party.  And then what you

10  said was, "You can move for leave to request more."  And

11  that's why we filed the motion instead of going through

12  the informal one because that's how we thought that's

13  what the Court said when you said "move for leave to

14  request more."

15          Irrespective of that, you are correct:  We can

16  prove that the wire transfers went out to the various

17  Asian entities or Hong Kong bank accounts or whatever

18  else.  I think we have the information we want them to

19  admit, that this was the total amount of dollars that

20  came in per designation during the time period.

21          And also, I took the time to reread the

22  transcript.  On Page 34, Mr. Mowrey actually agreed with

23  the Court, and what he said was, "Going to the heart of

24  the allegation, we believe we will be able to show that

25  the monies that were designated went to the particular

1    items that were specified."

2          Your Honor, we've gotten zero documents -- I'm

3    not exaggerating -- zero documents showing that the

4    monies that were -- went to Asia were spent as

5    specified.  And that's the heart of it, just like the

6    Court said.

7          Mr. Mowrey says it's possible.  He says they

8    are going to be able to show it at trial.  Again, as I

9    said at the hearing before, if he can show that now,

10   we'll go away.  We lost.  If he can show it at trial, we

11   lose.  And we're really just trying to pin it down:  Can

12   you show it.

13         So the requests for admissions were simply

14   intended to say, "Admit that this was the total amount,

15   admit that you sent it somewhere, admit you have no

16   evidence as to how it was spent.  If you do have the

17   evidence, give it to us."  It's very simple, and that's

18   all we want.

19         We disagree with the characterization of the

20   cases.  We think that the Hardy case is fully on our

21   side, where the Court did allow the request.  Charles

22   Alan Wright article says the same thing:  The purpose of

23   the rule is to expedite trial and to relieve the parties

24   of the cost of proving facts that will not be disputed

25   at trial.

1        Again, if this is not going to be disputed at

2   trial or deposition or anything else, let's get this out

3   of the way and say do you have the evidence one way or

4   the other.

5        Mr. Mowrey tells me in phone calls that they

6   are assembling this, that they are working on some

7   report that might show this.  Well, they either have the

8   evidence that we can work on it or they don't, and

9   that's what we want.

10        THE COURT:  All right.  Thank you.

11        Mr. Mowrey?

12        MR. MOWREY:  Yes, your Honor.  The point here

13   is that the very issue that Mr. Stanley is getting at is

14   basically to prove his case or to disprove our case

15   through these requests for admissions, and that is just

16   a totally inappropriate way of -- that requests for

17   admissions are designed for.

18        Wright in Newark says that requests for

19   admissions are for matters that are not in dispute; and

20   typically what that means are things like admit you

21   signed this document; admit you signed that document.

22        What they are asking for, if you look at these

23   groups of admissions -- and actually, your Honor,

24   there's over a thousand of them.  If you look at these

25   groups of admissions, essentially what they are asking

1    is for us to admit liability in the case, and that is

2    simply inappropriate.

3         And they have -- one thing I will say, your

4    Honor, is you're correct:  We have not had an

5    opportunity to formally respond to their motion, and we

6    just cite a couple of cases in our position paper here;

7    but the fact is that plaintiffs have cited no cases to

8    the contrary in terms of the position that they have as

9    to the appropriateness of these requests for admissions.

10        And further, I mean, if you just look at the

11   admissions, they will not accomplish what the plaintiffs

12   want ultimately because it requires work on the site --

13   on the part of the defendants to go back and ensure that

14   the numbers that the plaintiff has come up with are

15   correct.  This is not a matter of just admitting that we

16   signed a document or a paper, which is what requests for

17   admissions are to do.

18        Requests for admissions are to get rid of

19   peripheral matters that should not be disputed at trial,

20   and what Mr. Stanley has done with these requests for

21   admissions is essentially attempt to prove his case

22   through them, and that's just a totally inappropriate

23   use of them.

24        THE COURT:  Well, help me understand that a

25   little bit.  The one example that has been cited relates

1  to a category for ministry tools, and that example seeks

2  an admission that during the stated time period, the

3  defendants received $71,468 in contributions from its

4  donors with regard to that project code.

5        I take it that that figure is an amount that

6  you supplied to the plaintiffs in discovery to date; is

7  that correct?

8        MR. MOWREY:  That -- no.  No, your Honor.  That

9  figure is a compilation that the plaintiffs -- that the

10  plaintiffs -- that they state in their very beginning of

11  their request for admissions.  The purpose of involving

12  requests for admission, plaintiffs' counsel had created

13  the attached spreadsheet, and they had created that

14  spreadsheet from these various documents that have been

15  produced in the litigation by us; but we would have to

16  go and independently verify that those calculations are

17  correct.  I mean, that would be one thing that we would

18  have to do with respect to the first -- to the first

19  admission.

20        THE COURT:  All right.  Hang on a second,

21  Mr. Mowrey.

22        Mr. Stanley, we're using project code 1000,

23  ministry tools, as an example.  Where did you get the

24  $71,468 figure?

25        MR. STANLEY:  Well, they gave us reports for

1   each year.  They gave us 2009, 2010, '11, '12, '13, '14,

2   '15 and through March of 2016, and so we gave them the

3   Bates report of each number they gave us and then we

4   just added those numbers together to get January 1, 2009

5   through March 31, 2016.  That's an easy math thing.

6            As a matter of fact, they have a program called

7   Donor Direct.  They can do it themselves with one press

8   of a keystroke, but they didn't give us an aggregated

9   report, so we just went to each one and added them

10  together.

11           THE COURT:  All right.  Mr. Mowrey, how --

12           MR. STANLEY:  I'm sorry, your Honor.  One more

13  thing.  We gave them the spreadsheet.  We attached it to

14  show our calculations for all those years.

15           THE COURT:  All right.  Mr. Mowrey, how, in

16  fact, is that any different than if you had provided

17  them a set of documents and you get back a set of

18  requests for admissions that admits that this is a

19  properly authorized signature?  All they are saying is

20  admit that this aggregate amount, based on the

21  information you provided, is correct.  They're

22  simplifying an item of proof at trial.  What is wrong

23  with that?

24           MR. MOWREY:  Well, your Honor, again, it is not

25  "Admit that Exhibit A is a contract that you executed."

1   What they are doing is they are using a document for us

2   to go outside the admission to determine whether it is

3   correct.

4          For example, one of the cases that we cited,

5   and there's other cases, but the Martin-Marietta case is

6   a case that dealt with this type of issue and -- where

7   the Court said that requests for admissions are intended

8   to be a simplified procedure requiring minimal response

9   and explanation, quote, as well as rarely requiring the

10  reliance on documentation of facts outside the request

11  themselves.

12         So -- and again, your Honor, requests -- if we

13  go through these, each grouping of requests is designed

14  for the -- to go to the heart of liability in this case.

15  So you can't just look at one in isolation.

16         The first one, your Honor, if that were the

17  only admission with respect to each one of these

18  matters, then that would be one issue; but if the Court

19  wants them to go through each of these, you'll see that

20  it is not -- the request for admission itself on this

21  particular one is meaningless to the plaintiff unless

22  they can then get answers, and by answers, not through

23  requests for admissions but through a proof system that

24  the -- that goes to the heart of proving their case.

25         So number one can't just be -- my point is that

1  this very first admission with respect to all of these

2  cannot be looked at in isolation.

3          MR. STANLEY:  Your Honor, may I respond for a

4  second?  This is Marc Stanley.

5          THE COURT:  Well, not just yet, Mr. Stanley.

6          So what -- Mr. Mowrey, if the defendants have

7  turned over documents for individual years that says

8  this is the amounts that have been coded for this

9  particular project code, is that going to be -- is

10  aggregating those amounts for all of the years something

11  that is going to be in dispute at trial?

12          MR. MOWREY:  I don't think so, your Honor.

13          THE COURT:  Then why is it -- then why is it

14  improper under Rule 36?

15          MR. MOWREY:  Well, for one reason -- one

16  reason, your Honor, the sheer volume of this is

17  improper.  I mean, there are -- I don't know how many

18  there are.  There is 160, and it would require us to

19  actually go through and to verify the plaintiffs'

20  compilations.

21          THE COURT:  It requires someone to do math.  Do

22  you want the --

23          MR. MOWREY:  I under- --

24          THE COURT:  Do you want us to take up two or

25  three, you know, days of the jury's time with a

1   calculator doing math?  Is that the objective?

2        MR. MOWREY:  No, your Honor, no.

3        And, your Honor, with respect to this first

4   admission, request for admission, I mean, I would agree

5   that -- I mean, it does require work on the defendants'

6   part, but we could -- I mean, there is not an issue that

7   I think will be in dispute with respect to the first

8   admission.  That's not to say that we can admit them

9   all.  We have to check the math and go through and do

10  all that, but...

11       THE COURT:  All right.  Now back to you,

12  Mr. Stanley.  They have apparently provided information

13  about the amounts of donations that were received and

14  broken that out by their codes.  How would you describe

15  or characterize what sort of information has been

16  provided with -- that would go to the issue of matching

17  up expenditures with the designations made by the

18  donors?

19       MR. STANLEY:  That's exactly my point.  There's

20  zero documents and zero information.  And we tried to

21  get about this first in our first set of discovery

22  requests, and we got objections saying that requires a

23  forensic accounting and it's beyond what the Murphys

24  spent their money on.

25       And so we said, all right.  Rather than bother

1    the Court, they gave us this other document; we'll just

2    break it up ourselves and say, "Show us how you've spent

3    this money," and they've given us zero documents so far

4    and zero information on it.

5        THE COURT:  Well, have they told you why they

6    cannot provide it?  Is it a matter of they don't

7    maintain records of expenditures by project code, or

8    it's information that they don't have in their

9    possession?  What explanation in your good faith

10   conferrals have they provided you?

11       MR. STANLEY:  They haven't provided anything.

12   They just, they basically said it's information that

13   other people have that they don't control, which we

14   dispute, but that's another day and another time.

15       Then they say it violates international laws,

16   which we dispute; that's another day and another time.

17       What we're really just trying to find out now,

18   what does GFA have.  We're not asking what their

19   international partners have.  Do you, GFA, have any

20   information on how this money was spent and, if so, give

21   it to us; and the answer so far is they've hemmed and

22   hawed.  But they haven't come out and said, "We don't

23   have it"; they just said, "We're objecting."

24       THE COURT:  All right.  Mr. Mowrey, you

25   apparently -- your clients apparently track donations

1   received by these different categories.  Help me

2   understand the methods that they use to track their

3   disbursements or their expenditures by purpose.

4       MR. MOWREY:  All right, your Honor.  Yes, and I

5   will answer that question.

6       Your Honor, I feel compelled to respond to

7   Mr. Stanley here and let the Court have some background.

8       As the Court noted, there have been two

9   discovery requests that were sent to the plaintiff -- to

10  the defendants previously by Mr. Stanley, both of which

11  we have responded to.

12      When we received the third set of requests for

13  admissions, as the Court noted and Mr. Stanley pointed

14  out, we objected to that third set; and in attempting to

15  follow the Court's procedures, we had a conference with

16  Mr. Stanley with respect to that third set, and

17  Mr. Stanley said that he had many issues with respect to

18  our previous responses to discovery requests.

19      The first request had been responded to about

20  two months ago.  We had never heard anything from

21  Mr. Stanley about problems with our discovery responses

22  and so that's why, when I notified the Court on that

23  Saturday evening, after our conversation we had with

24  Mr. Stanley, we notified the Court that we had a dispute

25  with respect to the third set, and Mr. Stanley wanted us

1   to also inform the Court that we had disputes regarding

2   other -- his first two discovery requests.  And we were

3   to have a conference regarding those other disputes that

4   he had the following Wednesday.

5        Well, then on the Tuesday before the Wednesday,

6   Mr. Stanley said, "We've withdrawn our request, our

7   third request, and there's no need to have a

8   conference."  Well, the conference was going to be on

9   whatever problems he had with our discovery responses

10  that we had been previously provided.

11       So we have never conferred regarding his

12  discovery -- the conference that we were going to have

13  was cancelled.  So we haven't conferred with respect to

14  issues that he had on those first two requests.

15       Now, I have made it clear to Mr. Stanley, and

16  I'll state to the Court:  We have withheld -- and by

17  "we," I'm talking about the defendants in this case --

18  have withheld no documents based on our objections.

19       Yes, we have -- we have provided objections to

20  his requests, but we have withheld no documents based on

21  objections.  We have given him the entire general ledger

22  of our client.  We have produced approximately 50,000

23  documents.  We have produced documents that we have in

24  our possession showing where these monies were spent.

25       But it is important, your Honor -- and this is

1    the issue that came up as a case management issue -- the

2    defendant in this case -- the defendants are GFA-USA and

3    these individuals.  GFA-USA is in the United States, and

4    it sends money according to these designations, and

5    that's what these admissions, the first part that we've

6    been talking about here, according to these designated

7    amounts.

8              GFA does not spend the money.  The money is

9    spent by the foreign entities, and Mr. Stanley has

10   chosen not to sue the foreign entities.  He has made no

11   attempts to get any information from these foreign

12   entities.

13             So we have provided -- and I will say, your

14   Honor, there are still documents we have that we -- it's

15   like in any case.  You continue to find documents; and

16   frankly, the documents that we're finding now are not

17   doc- -- we don't think they're documents that

18   Mr. Stanley has specifically requested.  But to the

19   extent that we have any documents that bear on any of

20   these issues, we intend to produce them from these

21   defendants.

22             So that's where we are, your Honor.

23             THE COURT:  Well, you receive millions upon

24   millions of dollars in donations.  Your donors, your

25   solicitation allow them to designate it for specific

1    purposes.

2          You're describing for me somewhat of a shell

3    game inasmuch as if a donor were ever to say, "How can I

4    know that the money that I designated for ministry tools

5    actually went to ministry tools," and you're saying,

6    "Well, we can't prove that.  You'd have to ask the

7    people that we gave it to," who, by the way, are foreign

8    companies or foreign entities or foreign individuals.

9          So if that's what the response is, then are you

10   telling me that there is no accounting or accountability

11   mechanism from the people that you forward money to in

12   Asia to corroborate or verify that they are spending the

13   money in accordance with your donors' intentions?

14         MR. MOWREY:  No, your Honor, I'm not saying

15   that; and, your Honor, this is not a shell game.  First

16   of all, one of the issues that came up at the case

17   management hearing were these GAAP audits that we have

18   produced, that were now produced.  These were audits

19   that were done according to GAAP standards in India.

20         But, your Honor, I feel that -- I have been

21   reluctant because I don't feel we are required to, but I

22   want to tell the Court and plaintiffs' counsel where we

23   are on this.

24         We have retained -- and by "we," we're talking

25   about GFA-USA has retained one of the big four

1  accounting firms, well known firm.  I mean, it's one of

2  the big four, with international offices, well

3  respected.  That firm has been working with their Indian

4  counterpart to obtain documents in India.  We have

5  not -- the U.S. entity, the accounting firm, has not yet

6  had access to those documents.  Only recently have

7  the -- has the Indian counterpart been given access to

8  documents.

9        We're not sure exactly what documents they are

10  looking at, but they are -- but we do know that the task

11  that they are about is a forensic accounting.  The plan

12  has been blessed by the U.S. -- the big four accounting

13  firm, and that's what we're about.

14        The sensitivity here, your Honor, you can go on

15  the Internet and find this stuff.  These NGOs, the

16  nongovernmental organizations, they have been subject to

17  being shut down in a minute's notice in India when there

18  is deemed too much control by the United States or by

19  foreign countries -- foreign companies in these

20  countries, or in India specifically, compassion.  I

21  mean, there's a number of them that have been shut out

22  of India because of the control that has -- that the

23  Indian government has deemed exercised over them.

24        So we have no -- we have no objection to these

25  documents that are being examined by the Indian arm of

1    this government.  I mean, if they are going to be used

2    in this litigation, they have clearly got to be given to

3    plaintiffs' counsel, so -- and we understand that.  But

4    at this point, we do not have possession of these, of

5    these documents, and neither does the U.S. arm of the

6    entity that we retained have access to them.

7          So, your Honor -- and I will also say that one

8    of the categories of documents I don't think that has

9    specifically been requested but that we -- and we only

10   recently found out about that we will be producing to

11   the plaintiffs.  These are not accounting documents, but

12   our client has regularly received information from India

13   regarding the work that is being done in India.  And

14   this is not just a -- sort of a page here or there.  I

15   mean, it is extensive, and it's done I think on a

16   monthly or quarterly -- a quarterly basis.

17         So this is -- I just, I felt I needed to tell

18   the Court this because I don't want the Court to get the

19   impression that this is some person out there that is

20   just raising money.  And we all -- I mean, I think we

21   all know that there are people like that, and we've seen

22   them in the news, these people that are scammers and

23   they raise money and they enrich themselves, and it's

24   reprehensible.

25         And I sincerely -- I believe, your Honor -- and

1  I know every lawyer in this firm believes -- that the

2  work that is being done by this -- by GFA-USA and by

3  their Indian counterparts, this is not a sham.  This is

4  real work that people's lives are dependent on, and

5  we're going to -- it's difficult to prove from an

6  accounting standpoint because of the access, but we

7  intend to do it, your Honor, and we think we can do it.

8       THE COURT:  Let me ask you this.  These field

9  partners that actually spend the money that you forward

10 on to them from your donors, do they have other

11 benefactors?  Do they have other charitable

12 organizations such as Gospel for Asia that is funneling

13 money to them, or is Gospel for Asia their primary

14 source of funding?

15      MR. MOWREY:  There are other Gospel for Asias,

16 your Honor, not just in India; but again, one of the --

17 if you look at the -- there's a number of organizations

18 over there.  But Believers Church, which is probably the

19 primary organization, I mean, it is a -- it is a church

20 that has a number of -- I'm blanking on the word now --

21 the diocese.  It has a number of diocese that, within

22 these diocese, there are a number of churches and so

23 there's monies that are raised obviously by, you know --

24 in India through these churches and through the diocese.

25      So -- and then there are -- there's a hospital;

1  there's a rubber plant.  These organizations are for

2  profit and then they use that money also for their

3  charitable purposes.

4          THE COURT:  I guess what I'm asking -- I guess

5  what I'm asking is are there any other charitable

6  organizations that have no ties whatsoever to Gospel for

7  Asia or any entities that are tied to Mr. Yohannan

8  that's the head of the church, as I understand it?  You

9  know, is there Feed the Children or whatever other U.S.

10  or international-based charitable entity that is funding

11  the field partners, or does it all come from someone

12  that has a connection to Gospel for Asia?

13          MR. MOWREY:  Your Honor, I don't know the

14  answer to that question.  I don't know the answer to

15  that question.

16          THE COURT:  All right.

17          MR. STANLEY:  Your Honor, this is Marc Stanley.

18  We believe it's all related to Yohannan and GFA, 99

19  percent.

20          THE COURT:  Well, I guess my -- where I'm going

21  with this, Mr. Mowrey, is control; and, you know, it

22  would seem that if these field partners are dependent

23  upon either the defendants in this case or the

24  principals in this case that have been sued directly or

25  indirectly for their financial backing that the power of

1  the pursestrings brings with it some amount of control

2  over the production of documents that would establish

3  how the money is spent.

4        If you combine that fact with the fact that you

5  have -- if the allegation is true; I don't know whether

6  it is or not.  But the allegation is that there is a

7  representation that is made to your donors that their

8  money will be spent in the field for a specific purpose.

9        So given that those are two components, or at

10  least alleged components, one would think that there

11  would be some sort of paper trail to establish how the

12  money was actually expended and that wouldn't -- that

13  paper trail wouldn't be a document that's kept in a

14  vault by the field partner, but one would think that

15  they would be at all times ready, willing, and able to

16  share that with the source of their money.  So I'm just

17  really kind of having a hard time with this notion that

18  these documents aren't readily available.

19        That said, I am very appreciative of what you

20  are saying, that the defendants have engaged a top four

21  international accounting firm to conduct a forensic

22  audit.  I think that that is an incredibly good action

23  that the organization is taking, regardless of this

24  pending litigation; but as good as that first step is,

25  it doesn't really do a whole lot of good for the

1   plaintiffs at this point in time.

2          What you're basically saying is, outside of

3   this litigation context, "We're looking into this," not

4   just that, but "We're sincerely and genuinely looking

5   into this"; not just that but, "We've hired really,

6   really smart people to genuinely and sincerely look into

7   this, and as soon as we have more information, we're

8   going to let you know; stay tuned."

9          Well, as much as I appreciate what seems to be

10  a very commonsense first step, that's not how litigation

11  works.  The plaintiffs have sued these defendants for

12  fraud, and you have to understand that they might be

13  suspicious of how the big four accounting firm is

14  instructed to acquire information.

15         They have a right to acquire it independently;

16  and to the extent that you don't have the documentation

17  and you do not control in any manner production of

18  documents that have been requested, then I get it.  You

19  may not be in a position to provide documents that you

20  don't have or that you don't have access or control

21  over; but if that's the case, that's your response.

22         Here's what I'm going to do.  I think that a

23  formal ruling by the Court is premature.  There is a

24  pending motion on the table.  I think that the

25  defendants should have the right to file a fulsome

1    response.  Frankly, I have looked at bits and pieces of

2    the documents that have been appended to the motion;

3    I've not looked over it in a tremendous amount of

4    detail.  It seems to be duplicative, but I've not looked

5    at it in a tremendous amount of detail.

6          I think that the defendants should be entitled

7    to file a complete response.  I would ask when you file

8    a response that you either do so in a manner or include

9    alternative language to seek a protective order over any

10   documents that you believe there is a legal basis for

11   nondisclosure or privilege or whatever the case may be

12   so that we can take up that issue on the front end as

13   well; and once you have filed your response, the Court

14   will take a deeper dive into the issue and examine the

15   documents more thoroughly and will issue an opinion

16   hopefully as quickly as possible.

17         But having said that, let me tell you where the

18   Court's current thoughts are, just based on the

19   information that is available to it.  First of all, I

20   think my understanding has been confirmed today that the

21   issue in this case is whether the proceeds of these

22   donations have been spent as designated by the donors at

23   the invitation of the defendants or not; and it occurs

24   to me that discovery aimed at the amounts of donations

25   received, broken down by those designated purposes, is

1   wholly appropriate discovery; and the other side of the

2   equation being information and documentation as to how

3   donations received were spent is a wholly appropriate

4   area for discovery.

5           Whether it's broken down and described as

6   requests for admissions in asking these six different

7   things, whether that is necessary or not, whether there

8   is a better and more efficient way of doing it, I don't

9   know, but I can tell you -- and I'll wait on making that

10  decision until I have the defendants' response, but I

11  can tell you that the Court is going to have a hard time

12  finding that the discovery of this information is not

13  going to be permitted.

14          It may be that this information is better

15  sought through interrogatories, but it looks like the

16  defendants have either objected to providing answers

17  based on interrogatories, or at least have reserved

18  these objections in a manner that I'm not sure the Court

19  agrees with.

20          I don't think that the rules of federal

21  procedure contemplate your ability to say, "We object

22  based on this, we object based on that, we object based

23  on this; but subject to those objections, we're going to

24  do our best to look for and give you something."

25          You either have an objection or you don't; and

1   the rules require that, to the extent that you have

2   documents outside the objection, you have to produce

3   them; and to the extent you want to object, you need to

4   file a motion for a protective order.

5          And I'm -- you know, I don't have any basis

6   to -- well, maybe I do on the overbreadth.  I don't

7   think it's going to be found to be overbroad.  You know,

8   you object based on things of international law, yet you

9   don't recite any basis for that.  I can't imagine what

10  that would be but, again, it hasn't been briefed.  I'm

11  willing to look at that.

12         But it just seems that you're objecting to the

13  format of requests for admissions when you have raised

14  all these objections to providing information when they

15  were propounded as interrogatories and requests for

16  documents, and you've done so in such a manner of,

17  "Well, we object, but we're going to do our best and

18  we'll let you know.  Stay tuned."  I just don't think

19  that that is an appropriate objection.

20         So we have now these requests for admissions.

21  I agree with the defendants' position that requests for

22  admissions are generally intended to be used for

23  establishing matters that are undisputed or undisputable

24  to make the discovery process and the trial process

25  easier; and if the answers to the requests for

1  admissions are necessarily going to require parsing as

2  to why the defendant can or cannot answer the request

3  for admission, then it could be that the objective of

4  simplicity and efficiency is not capable of being

5  achieved and so a request for admission, I get it, may

6  not be good.

7        That said, these requests for admissions look

8  pretty darn straightforward.  To the extent that it's

9  simply asking you to admit a mathematical calculation,

10  that seems like a pretty darn good use of a request for

11  admission.

12        It could be that in lieu of a request for

13  admission and because the responses to those requests

14  for admission as currently phrased would require a

15  certain amount of parsing, it could be that in lieu of

16  responding that the defendants could agree to stipulate

17  and could formulate the language of the stipulation that

18  would get the parties to the same bottom line; and that,

19  combined with an agreement to provide documentation to

20  support the stipulation, that might make it more

21  efficient.

22        A fourth possibility that the Court can

23  envision is the Court appointing a forensic accountant

24  or a special master who could hire a forensic accountant

25  to do this discovery at the Court's direction.

1        So as the defendants contemplate their response

2   to the plaintiffs' motion, I would ask that you keep in

3   the back of your mind that the Court is very likely to

4   allow some form or fashion of discovery as the

5   plaintiffs currently seek; and if the Court, in your

6   response, believes that you are putting up illegitimate

7   barriers to that discovery or evasive answers, then you

8   might, you know, potentially be looking at the Court

9   appointing a special master to get to the bottom of

10  this.

11       Again, if your point is you don't have

12  documents and you can't provide something that you don't

13  have, then that is your response; but if you have

14  documents, if you have information or are, because you

15  control the pursestrings, in a position of control, I

16  would suggest that you try a little bit harder.  But in

17  any event, how much time do you need from today to

18  respond to the motion, Mr. Mowrey?

19       MR. MOWREY:  Could we have two weeks, your

20  Honor?

21       THE COURT:  Yes.  Two weeks from today will be

22  your response date.

23       Is there anything further we need to take up

24  today, Mr. Stanley?

25       MR. STANLEY:  No, sir.  Thank you.

1          THE COURT:  Mr. Mowrey?

2          MR. MOWREY:  No.  No, your Honor, thank you.

3          THE COURT:  All right.  Thank you-all.  We're

4  adjourned.

5          (Proceedings adjourned at 11:30 a.m.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Dana Hayden, Federal Official Realtime Court

4    Reporter, in and for the United States District Court

5    for the Western District of Arkansas, do hereby certify

6    that pursuant to Section 753, Title 28, United States

7    Code that the foregoing is a true and correct transcript

8    of the stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page

10   format is in conformance with the regulations of the

11   Judicial Conference of the United States.

12          Dated this 28th day of September, 2017.

13

14

15

16          _____

17          Dana Hayden, CCR, RMR, CRR
            Federal Official Court Reporter

18

19

20

21

22

23

24

25

## $

**$71,468** [2] - 13:3, 13:24

## '

**'11** [1] - 14:1
**'12** [1] - 14:1
**'13** [1] - 14:1
**'14** [1] - 14:1
**'15** [1] - 14:2

## 1

**1** [1] - 14:4
**1000** [1] - 13:22
**10:36** [1] - 1:14
**11:30** [1] - 34:5
**1500** [1] - 2:8
**16** [1] - 9:7
**160** [1] - 16:18
**1600** [1] - 2:17
**170** [1] - 5:13
**170-something** [1] - 6:1
**179** [2] - 7:20, 8:5

## 2

**200** [2] - 2:17, 5:13
**2009** [2] - 14:1, 14:4
**2010** [1] - 14:1
**2016** [2] - 14:2, 14:5
**2017** [2] - 1:14, 35:12
**214** [2] - 2:9, 2:13, 2:23
**22** [1] - 1:14
**2200** [1] - 2:22
**221** [1] - 2:4
**25** [1] - 9:8
**265-9265** [1] - 2:13
**28** [1] - 35:6
**2800** [1] - 2:22
**28th** [1] - 35:12

## 3

**31** [1] - 14:5
**34** [1] - 9:22
**35** [1] - 1:24
**36** [2] - 8:16, 16:14
**375-2301** [1] - 2:18
**375-6861** [1] - 2:19

## 4

**443-4300** [1] - 2:9
**479** [2] - 2:5, 2:5

## 5

**50,000** [1] - 20:22
**501** [2] - 2:18, 2:19
**521-9600** [1] - 2:5
**521-9996** [1] - 2:5
**5910** [1] - 2:12
**5:17-CV-5035** [2] - 1:5, 3:10

## 6

**6116** [1] - 2:8

## 7

**72201-3637** [1] - 2:18
**72701** [2] - 1:25, 2:4
**73** [1] - 9:8
**740-8450** [1] - 2:23
**75206** [2] - 2:9, 2:13
**75230** [1] - 2:22
**753** [1] - 35:6

## 9

**980** [1] - 2:12
**99** [1] - 26:18

## A

**a.m** [2] - 1:14, 34:5
**ability** [1] - 30:21
**able** [3] - 9:24, 10:8, 27:15
**above-entitled** [1] - 35:9
**access** [5] - 23:6, 23:7, 24:6, 25:6, 28:20
**accomplish** [1] - 12:11
**accordance** [1] - 22:13
**according** [3] - 21:4, 21:6, 22:19
**accountability** [1] - 22:10
**accountant** [2] - 32:23, 32:24
**accounting** [10] - 17:23, 22:10, 23:1, 23:5, 23:11, 23:12, 24:11, 25:6, 27:21, 28:13
**accounts** [1] - 9:17
**achieved** [2] - 8:15, 32:5
**acquire** [2] - 28:14, 28:15

**Act** [1] - 4:25
**action** [3] - 3:4, 4:22, 27:22
**actual** [1] - 9:1
**ADAMS** [1] - 4:14
**Adams** [2] - 2:16, 4:13
**added** [2] - 14:4, 14:9
**address** [1] - 5:3
**adjourned** [2] - 34:4, 34:5
**admission** [16] - 8:4, 13:2, 13:12, 13:19, 15:2, 15:17, 15:20, 16:1, 17:4, 17:8, 32:3, 32:5, 32:11, 32:13, 32:14
**admissions** [29] - 5:12, 5:14, 6:2, 8:3, 8:14, 9:9, 10:13, 11:15, 11:17, 11:19, 11:23, 11:25, 12:9, 12:11, 12:17, 12:18, 12:21, 13:11, 14:18, 15:7, 15:23, 19:13, 21:5, 30:6, 31:13, 31:20, 31:22, 32:1, 32:7
**admit** [11] - 9:19, 10:14, 10:15, 11:20, 11:21, 12:1, 14:20, 14:25, 17:8, 32:9
**admits** [1] - 14:18
**admitting** [1] - 12:15
**aggregate** [1] - 14:20
**aggregated** [1] - 14:8
**aggregating** [1] - 16:10
**ago** [1] - 19:20
**agree** [3] - 17:4, 31:21, 32:16
**agreed** [1] - 9:22
**agreement** [1] - 32:19
**agrees** [1] - 30:19
**aimed** [1] - 29:24
**air** [2] - 6:6, 6:17
**Alan** [1] - 10:22
**ALL** [1] - 2:1
**allegation** [3] - 9:24, 27:5, 27:6
**alleged** [2] - 4:18, 27:10
**allow** [3] - 10:21, 21:25, 33:4
**alternative** [1] - 29:9
**amount** [12] - 7:6, 7:20, 8:7, 8:12, 9:19, 10:14, 13:5, 14:20, 27:1, 29:3, 29:5, 32:15
**amounts** [5] - 16:8,

16:10, 17:13, 21:7, 29:24
**answer** [5] - 18:21, 19:5, 26:14, 32:2
**answers** [5] - 15:22, 30:16, 31:25, 33:7
**appear** [1] - 7:8
**APPEARANCES** [1] - 2:1
**appearing** [5] - 3:14, 3:16, 3:19, 3:24, 4:8
**appended** [1] - 29:2
**appointing** [2] - 32:23, 33:9
**appreciate** [1] - 28:9
**appreciative** [1] - 27:19
**appropriate** [5] - 6:17, 8:10, 30:1, 30:3, 31:19
**appropriateness** [1] - 12:9
**area** [1] - 30:4
**argument** [1] - 9:2
**Arkansas** [5] - 1:25, 2:4, 2:18, 4:24, 35:5
**ARKANSAS** [2] - 1:1, 1:15
**arm** [2] - 23:25, 24:5
**article** [1] - 10:22
**Asia** [8] - 3:8, 3:9, 10:4, 22:12, 25:12, 25:13, 26:7, 26:12
**ASIA** [1] - 1:7, 1:7
**Asia-International** [1] - 3:9
**ASIA-INTERNATIONAL** [1] - 1:7
**Asian** [1] - 9:17
**Asias** [1] - 25:15
**assembling** [1] - 11:6
**assigned** [1] - 3:10
**attached** [2] - 13:13, 14:13
**attempt** [1] - 12:21
**attempting** [1] - 19:14
**attempts** [1] - 21:11
**audit** [1] - 27:22
**audits** [2] - 22:17, 22:18
**authority** [1] - 8:12
**authorized** [1] - 14:19
**available** [2] - 27:18, 29:19
**Avenue** [3] - 2:4, 2:17, 2:22

## B

**background** [1] - 19:7
**backing** [1] - 26:25
**bank** [1] - 9:17
**barriers** [1] - 33:7
**based** [10] - 14:20, 20:18, 20:20, 26:10, 29:18, 30:17, 30:22, 31:8
**basis** [4] - 24:16, 29:10, 31:5, 31:9
**Bassett** [3] - 2:3, 2:3, 3:25
**BASSETT** [1] - 4:1
**Bates** [1] - 14:3
**bear** [1] - 21:19
**BEFORE** [1] - 1:13
**beginning** [1] - 13:10
**behalf** [5] - 1:3, 3:4, 3:14, 3:19, 4:8
**behind** [1] - 3:7
**believers** [1] - 25:18
**believes** [2] - 25:1, 33:6
**benefactors** [1] - 25:11
**benefit** [2] - 6:22, 6:24
**best** [2] - 30:24, 31:17
**better** [3] - 8:25, 30:8, 30:14
**beyond** [1] - 17:23
**big** [4] - 22:25, 23:2, 23:12, 28:13
**bit** [5] - 5:7, 6:12, 9:6, 12:25, 33:16
**bits** [1] - 29:1
**blanking** [1] - 25:20
**blessed** [1] - 23:12
**bother** [1] - 17:25
**bottom** [2] - 32:18, 33:9
**break** [1] - 18:2
**brewing** [1] - 3:12
**briefed** [1] - 31:10
**bring** [1] - 3:4
**brings** [1] - 27:1
**broken** [3] - 17:14, 29:25, 30:5
**BROOKS** [1] - 1:13
**Brown** [1] - 2:17
**but..** [1] - 17:10

## C

**calculation** [1] - 32:9
**calculations** [2] - 13:16, 14:14
**calculator** [1] - 17:1

**cancelled** [1] - 20:13
**cannot** [3] - 16:2, 18:6, 32:2
**capable** [1] - 32:4
**Capitol** [1] - 2:17
**CARROLL** [1] - 1:8
**case** [26] - 3:10, 4:17, 6:13, 7:3, 7:13, 8:20, 8:22, 10:20, 11:14, 12:1, 12:21, 15:5, 15:6, 15:14, 15:24, 20:17, 21:1, 21:2, 21:15, 22:16, 26:23, 26:24, 28:21, 29:11, 29:21
**CASE** [1] - 1:5
**cases** [6] - 8:17, 10:20, 12:6, 12:7, 15:4, 15:5
**categories** [2] - 19:1, 24:8
**categorize** [1] - 7:21
**category** [1] - 13:1
**causes** [2] - 3:4, 4:22
**CCR** [2] - 1:23, 35:17
**central** [1] - 7:12
**Central** [2] - 2:8, 2:12
**certain** [4] - 7:19, 7:23, 8:7, 32:15
**CERTIFICATE** [1] - 35:1
**certify** [1] - 35:5
**chance** [1] - 5:20
**characterization** [1] - 10:19
**characterize** [1] - 17:15
**charitable** [6] - 4:21, 7:15, 25:11, 26:3, 26:5, 26:10
**Charles** [1] - 10:21
**check** [1] - 17:9
**children** [1] - 26:9
**chosen** [1] - 21:10
**church** [3] - 25:18, 25:19, 26:8
**churches** [2] - 25:22, 25:24
**cite** [2] - 8:12, 12:6
**cited** [4] - 8:17, 12:7, 12:25, 15:4
**claim** [1] - 4:25
**class** [1] - 3:5
**clear** [1] - 20:15
**clearly** [1] - 24:2
**client** [2] - 20:22, 24:12
**clients** [1] - 18:25
**Code** [1] - 35:7
**code** [4] - 13:4, 13:22,

16:9, 18:7
**coded** [1] - 16:8
**codes** [3] - 7:21, 8:6, 17:14
**College** [1] - 2:4
**combine** [1] - 27:4
**combined** [1] - 32:19
**common** [2] - 4:23, 4:25
**commonsense** [1] - 28:10
**companies** [2] - 22:8, 23:19
**compassion** [1] - 23:20
**compelled** [1] - 19:6
**compilation** [1] - 13:9
**compilations** [1] - 16:20
**complete** [1] - 29:7
**completely** [1] - 5:2
**components** [2] - 27:9, 27:10
**concerns** [2] - 5:3, 7:25
**conduct** [1] - 27:21
**Conference** [1] - 35:11
**CONFERENCE** [1] - 1:12
**conference** [11] - 3:12, 5:6, 5:19, 6:6, 6:14, 7:4, 19:15, 20:3, 20:8, 20:12
**conferrals** [1] - 18:10
**conferred** [2] - 20:11, 20:13
**confirmed** [1] - 29:20
**conformance** [1] - 35:10
**connection** [1] - 26:12
**consist** [1] - 3:6
**contemplate** [2] - 30:21, 33:1
**contend** [2] - 8:11, 8:18
**context** [1] - 28:3
**continue** [1] - 21:15
**contract** [1] - 14:25
**contrary** [1] - 12:8
**contributions** [1] - 13:3
**control** [9] - 18:13, 23:18, 23:22, 26:21, 27:1, 28:17, 28:20, 33:15
**conversation** [2] - 9:3, 19:23
**core** [3] - 7:13, 8:18, 8:20

**corporate** [1] - 3:6
**correct** [8] - 9:15, 12:4, 12:15, 13:7, 13:17, 14:21, 15:3, 35:7
**corresponds** [1] - 8:5
**corroborate** [1] - 22:12
**cost** [1] - 10:24
**counsel** [4] - 6:23, 13:12, 22:22, 24:3
**counter** [1] - 8:17
**counterpart** [2] - 23:4, 23:7
**counterparts** [1] - 25:3
**countries** [2] - 23:19, 23:20
**couple** [1] - 12:6
**course** [1] - 7:17
**COURT** [31] - 1:1, 3:1, 3:22, 3:24, 4:2, 4:4, 4:7, 4:11, 4:13, 4:15, 4:17, 11:10, 12:24, 13:20, 14:11, 14:15, 16:5, 16:13, 16:21, 16:24, 17:11, 18:5, 18:24, 21:23, 25:8, 26:4, 26:16, 26:20, 33:21, 34:1, 34:3
**Court** [43] - 1:24, 3:11, 5:6, 5:10, 5:18, 5:20, 5:22, 5:25, 6:5, 6:15, 6:19, 6:23, 7:1, 7:12, 9:13, 9:23, 10:6, 10:21, 15:7, 15:18, 18:1, 19:7, 19:8, 19:13, 19:22, 19:24, 20:1, 20:16, 22:22, 24:18, 28:23, 29:13, 30:11, 30:18, 32:22, 32:23, 33:3, 33:5, 33:8, 35:3, 35:4, 35:17
**Court's** [5] - 5:17, 6:3, 9:15, 29:18, 32:25
**created** [2] - 13:12, 13:13
**CRR** [2] - 1:23, 35:17
**current** [1] - 29:18

# D

**Dallas** [3] - 2:9, 2:13, 2:22
**Dana** [3] - 1:23, 35:3, 35:17
**DANIEL** [1] - 1:8
**darn** [2] - 32:8, 32:10
**date** [3] - 7:18, 13:6,

33:22
**Dated** [1] - 35:12
**DAVID** [1] - 1:8
**days** [1] - 16:25
**deal** [1] - 7:7
**dealt** [1] - 15:6
**Deceptive** [1] - 4:24
**decided** [2] - 5:21, 6:5
**decision** [1] - 30:10
**deemed** [2] - 23:18, 23:23
**deeper** [1] - 29:14
**defendant** [4] - 1:10, 4:21, 21:2, 32:2
**DEFENDANTS** [1] - 2:15
**defendants** [26] - 3:6, 4:8, 5:1, 5:11, 6:8, 7:14, 7:18, 7:23, 8:8, 8:9, 12:13, 13:3, 16:6, 19:10, 20:17, 21:2, 21:21, 26:23, 27:20, 28:11, 28:25, 29:6, 29:23, 30:16, 32:16, 33:1
**defendants'** [6] - 6:22, 6:25, 7:17, 17:5, 30:10, 31:21
**denied** [1] - 5:16
**deny** [1] - 5:1
**dependent** [2] - 25:4, 26:22
**deposition** [1] - 11:2
**describe** [1] - 17:14
**described** [1] - 30:5
**describing** [1] - 22:2
**designate** [1] - 21:25
**designated** [6] - 7:16, 9:25, 21:6, 22:4, 29:22, 29:25
**designation** [1] - 9:20
**designations** [2] - 17:17, 21:4
**designed** [2] - 11:17, 15:13
**detail** [2] - 29:4, 29:5
**determine** [1] - 15:2
**different** [6] - 5:8, 7:21, 8:5, 14:16, 19:1, 30:6
**difficult** [1] - 25:5
**diocese** [4] - 25:21, 25:22, 25:24
**direct** [1] - 14:7
**direction** [1] - 32:25
**directly** [1] - 26:24
**disagree** [1] - 10:19
**disbursements** [1] - 19:3
**disclosures** [1] - 7:24

**discovery** [24] - 3:13, 5:10, 6:15, 7:5, 7:17, 8:2, 8:15, 8:16, 13:6, 17:21, 19:9, 19:18, 19:21, 20:2, 20:9, 20:12, 29:24, 30:1, 30:4, 30:12, 31:24, 32:25, 33:4, 33:7
**disposition** [1] - 5:4
**disprove** [1] - 11:14
**dispute** [13] - 3:13, 5:11, 5:17, 7:2, 8:24, 11:19, 16:11, 17:7, 18:14, 18:16, 19:24
**disputed** [3] - 10:24, 11:1, 12:19
**disputes** [2] - 20:1, 20:3
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 35:4, 35:5
**dive** [1] - 29:14
**DIVISION** [1] - 1:2
**doc** [1] - 21:17
**document** [7] - 8:4, 11:21, 12:16, 15:1, 18:1, 27:13
**documentation** [4] - 15:10, 28:16, 30:2, 32:19
**documents** [36] - 7:20, 10:2, 10:3, 13:14, 14:17, 16:7, 17:20, 18:3, 20:18, 20:20, 20:23, 21:14, 21:15, 21:16, 21:17, 21:19, 23:4, 23:6, 23:8, 23:9, 23:25, 24:5, 24:8, 24:11, 27:2, 27:18, 28:18, 28:19, 29:2, 29:10, 29:15, 31:2, 31:16, 33:12, 33:14
**dollars** [2] - 9:19, 21:24
**donation** [2] - 7:21, 8:6
**donations** [10] - 4:20, 5:4, 7:15, 7:22, 17:13, 18:25, 21:24, 29:22, 29:24, 30:3
**done** [6] - 12:20, 22:19, 24:13, 24:15, 25:2, 31:16
**donor** [2] - 14:7, 22:3
**donors** [7] - 7:17, 13:4, 17:18, 21:24, 25:10, 27:7, 29:22
**donors'** [1] - 22:13
**down** [4] - 10:11, 23:17, 29:25, 30:5

duplicative [1] - 29:4
during [2] - 9:20, 13:2

# E

easier [1] - 31:25
East [1] - 1:24
easy [1] - 14:5
efficiency [1] - 32:4
efficient [2] - 30:8, 32:21
either [7] - 5:24, 8:25, 11:7, 26:23, 29:4, 30:16, 30:25
Ellan [1] - 2:21
EMERICK [1] - 1:9
end [1] - 29:12
engaged [1] - 27:20
enrich [1] - 24:23
enrichment [1] - 4:25
ensure [1] - 12:13
entire [1] - 20:21
entities [10] - 3:6, 3:7, 3:8, 4:21, 9:17, 21:9, 21:10, 21:12, 22:8, 26:7
entitled [2] - 29:6, 35:9
entity [3] - 23:5, 24:6, 26:10
envision [1] - 32:23
equation [1] - 30:2
essentially [3] - 4:18, 11:25, 12:21
establish [4] - 7:20, 8:19, 27:2, 27:11
establishing [1] - 31:23
evasive [1] - 33:7
evening [1] - 19:23
event [1] - 33:17
evidence [4] - 10:16, 10:17, 11:3, 11:8
exactly [2] - 17:19, 23:9
exaggerating [1] - 10:3
examine [1] - 29:14
examined [1] - 23:25
example [4] - 12:25, 13:1, 13:23, 15:4
executed [1] - 14:25
exercised [1] - 23:23
Exhibit [1] - 14:25
expedite [1] - 10:23
expended [1] - 27:12
expenditures [3] - 17:17, 18:7, 19:3
explain [1] - 5:2
explanation [2] - 15:9,

18:9
explanations [1] - 5:3
expressly [1] - 7:16
Expressway [2] - 2:8, 2:12
extensive [1] - 24:15
extent [5] - 21:19, 28:16, 31:1, 31:3, 32:8

# F

fact [6] - 7:13, 12:7, 14:6, 14:16, 27:4
facts [2] - 10:24, 15:10
fair [1] - 9:12
faith [1] - 18:9
far [2] - 18:3, 18:21
fashion [1] - 33:4
Fax [2] - 2:5, 2:19
FAYETTEVILLE [2] - 1:2, 1:15
Fayetteville [2] - 1:25, 2:4
Federal [3] - 1:24, 35:3, 35:17
federal [1] - 30:20
feed [1] - 26:9
felt [2] - 5:14, 24:17
field [5] - 25:8, 26:11, 26:22, 27:8, 27:14
figure [2] - 13:5, 13:9, 13:24
file [6] - 6:2, 6:9, 28:25, 29:7, 31:4
filed [3] - 6:8, 9:11, 29:13
filing [1] - 6:15
financial [2] - 7:14, 26:25
firm [7] - 23:1, 23:3, 23:5, 23:13, 25:1, 27:21, 28:13
Firm [1] - 2:3
firms [1] - 23:1
first [16] - 5:17, 9:4, 9:5, 13:18, 15:16, 16:1, 17:3, 17:7, 17:21, 19:19, 20:2, 20:14, 21:5, 22:15, 27:24, 28:10, 29:19
five [1] - 8:4
follow [1] - 19:15
following [1] - 20:4
FOR [4] - 1:7, 1:7, 2:2, 2:15
foregoing [1] - 35:7
foreign [8] - 21:9, 21:10, 21:11, 22:7, 22:8, 23:19

forensic [5] - 17:23, 23:11, 27:21, 32:23, 32:24
forgot [1] - 9:7
form [2] - 6:25, 33:4
formal [4] - 6:9, 6:11, 7:5, 28:23
formally [3] - 5:21, 6:3, 12:5
format [3] - 7:10, 31:13, 35:10
formulate [1] - 32:17
forth [1] - 4:22
forward [2] - 22:11, 25:9
four [5] - 22:25, 23:2, 23:12, 27:20, 28:13
fourth [1] - 32:22
frankly [2] - 21:16, 29:1
fraud [3] - 4:23, 4:24, 28:12
fraudulently [2] - 4:20, 5:1
friction [1] - 9:1
front [1] - 29:12
fully [1] - 10:20
fulsome [1] - 28:25
funding [2] - 25:14, 26:10
funneling [1] - 25:12

# G

GAAP [2] - 22:17, 22:19
game [2] - 22:3, 22:15
GARLAND [1] - 1:2
Garland [1] - 3:2
general [1] - 20:21
generally [1] - 31:22
genuinely [2] - 28:4, 28:6
GFA [8] - 18:18, 18:19, 21:2, 21:3, 21:8, 22:25, 25:2, 26:18
GFA-USA [4] - 21:2, 21:3, 22:25, 25:2
GISELA [1] - 1:8
given [6] - 6:16, 18:3, 20:21, 23:7, 24:2, 27:9
Gospel [7] - 3:8, 3:9, 25:12, 25:13, 25:15, 26:6, 26:12
GOSPEL [2] - 1:7
government [2] - 23:23, 24:1
Graves [1] - 2:3
graves [1] - 4:2

GRAVES [1] - 4:3
great [1] - 7:7
grounds [1] - 7:24
Group [1] - 2:8
grouping [1] - 15:13
groups [2] - 11:23, 11:25
guess [3] - 26:4, 26:20
guidance [1] - 6:19

# H

hamstrung [1] - 8:21
hang [1] - 13:20
hard [2] - 27:17, 30:11
harder [1] - 33:16
hardy [1] - 10:20
Harriet [2] - 2:21, 4:15
hawed [1] - 18:22
Hayden [3] - 1:23, 35:3, 35:17
head [1] - 26:8
hear [1] - 6:18
heard [1] - 19:20
hearing [3] - 9:7, 10:9, 22:17
heart [4] - 9:23, 10:5, 15:14, 15:24
held [1] - 35:8
help [4] - 6:19, 8:25, 12:24, 19:1
helpful [1] - 3:18
hemmed [1] - 18:21
hereby [1] - 35:5
hire [1] - 32:24
hired [1] - 28:5
hmiers@lockelord. com [1] - 2:23
hold [1] - 6:6
Hong [1] - 9:17
Honor [40] - 3:23, 4:1, 4:3, 4:5, 4:10, 4:12, 4:14, 4:16, 9:5, 10:2, 11:12, 11:23, 12:4, 13:8, 14:12, 14:24, 15:12, 15:16, 16:3, 16:12, 16:16, 17:2, 17:3, 19:4, 19:6, 20:25, 21:14, 21:22, 22:14, 22:15, 22:20, 23:14, 24:7, 24:25, 25:7, 25:16, 26:13, 26:17, 33:20, 34:2
HONORABLE [1] - 1:13
hopefully [1] - 29:16
hospital [1] - 25:25

# I

Ill [1] - 1:2
illegitimate [1] - 33:6
imagine [1] - 31:9
impasse [1] - 6:20
important [1] - 20:25
impression [1] - 24:19
improper [2] - 16:14, 16:17
inappropriate [4] - 5:14, 11:16, 12:2, 12:22
inasmuch [1] - 22:3
INC [1] - 1:7
Inc [1] - 3:8
include [3] - 3:15, 29:8
including [2] - 3:8, 7:24
incredibly [1] - 27:22
independently [2] - 13:16, 28:15
India [9] - 22:19, 23:4, 23:17, 23:20, 23:22, 24:12, 24:13, 25:16, 25:24
Indian [5] - 23:3, 23:7, 23:23, 23:25, 25:3
indirectly [1] - 26:25
individual [1] - 16:7
individually [1] - 3:3
Individually [1] - 1:3
individuals [4] - 3:5, 3:7, 21:3, 22:8
induced [2] - 4:20, 5:2
inform [1] - 20:1
informal [1] - 9:12
information [25] - 7:6, 7:8, 7:9, 7:20, 8:7, 8:21, 9:18, 14:21, 17:12, 17:15, 17:20, 18:4, 18:8, 18:12, 18:20, 21:11, 24:12, 28:7, 28:14, 29:19, 30:2, 30:12, 30:14, 31:14, 33:14
informed [2] - 5:20, 7:19
innocuous [1] - 5:3
input [1] - 6:18
instead [1] - 9:11
instructed [1] - 28:14
intend [2] - 21:20, 25:7
intended [3] - 10:14, 15:7, 31:22
intent [1] - 8:14
intentions [1] - 22:13
International [1] - 3:9

**international** [7] - 7:25, 18:15, 18:19, 23:2, 26:10, 27:21, 31:8
**INTERNATIONAL** [1] - 1:7
**international-based** [1] - 26:10
**Internet** [1] - 23:15
**interrogatories** [3] - 30:15, 30:17, 31:15
**invitation** [1] - 29:23
**involving** [1] - 13:11
**irrespective** [1] - 9:15
**isolation** [2] - 15:15, 16:2
**issue** [14] - 5:23, 7:13, 8:19, 11:13, 15:6, 15:18, 17:6, 17:16, 21:1, 29:12, 29:14, 29:15, 29:21
**issues** [4] - 19:17, 20:14, 21:20, 22:16
**item** [1] - 14:22
**items** [1] - 10:1
**itself** [1] - 15:20

### J

**jadams@shultslaw.com** [1] - 2:19
**James** [2] - 2:3, 4:2
**January** [1] - 14:4
**jgraves@bassettlawfirm.com** [1] - 2:6
**John** [2] - 2:16, 4:13
**Jr** [1] - 2:11
**Judicial** [1] - 35:11
**jury's** [1] - 16:25

### K

**K.P** [1] - 1:7
**keep** [1] - 33:2
**kept** [1] - 27:13
**keystroke** [1] - 14:8
**kind** [5] - 3:15, 6:17, 6:23, 9:2, 27:17
**known** [2] - 3:8, 23:1
**Kong** [1] - 9:17

### L

**language** [2] - 29:9, 32:17
**last** [1] - 5:10
**Law** [2] - 2:3, 2:8
**law** [4] - 4:23, 4:25, 7:25, 31:8

**laws** [1] - 18:15
**lawsuit** [1] - 4:22
**lawyer** [1] - 25:1
**learned** [1] - 5:25
**learning** [1] - 5:17
**least** [3] - 7:4, 27:10, 30:17
**leave** [4] - 6:3, 6:8, 9:10, 9:13
**ledger** [1] - 20:21
**legal** [1] - 29:10
**letter** [1] - 6:23, 6:25
**liability** [2] - 12:1, 15:14
**lieu** [2] - 32:12, 32:15
**likely** [1] - 33:3
**line** [1] - 32:18
**listing** [1] - 3:16
**litigation** [5] - 13:15, 24:2, 27:24, 28:3, 28:10
**lives** [1] - 25:4
**LLP** [3] - 2:12, 2:17, 2:21
**Locke** [1] - 2:21
**look** [9] - 11:22, 11:24, 12:10, 15:15, 25:17, 28:6, 30:24, 31:11, 32:7
**looked** [4] - 16:2, 29:1, 29:3, 29:4
**looking** [4] - 23:10, 28:3, 28:4, 33:8
**looks** [1] - 30:15
**Lord** [1] - 2:21
**lose** [1] - 10:11
**lost** [1] - 10:10

### M

**M-i-l-l-s** [1] - 4:6
**M.D** [1] - 1:2
**machine** [1] - 1:22
**maintain** [1] - 18:7
**management** [4] - 6:13, 7:3, 21:1, 22:17
**manner** [4] - 28:17, 29:8, 30:18, 31:16
**Marc** [4] - 2:7, 3:20, 16:4, 26:17
**March** [2] - 14:2, 14:5
**marcstanley@mac.com** [1] - 2:10
**Marietta** [1] - 15:5
**Martin** [3] - 2:7, 3:22, 15:5
**Martin-Marietta** [1] - 15:5
**Mountain** [1] - 1:24
**master** [2] - 32:24,

33:9
**matching** [1] - 17:16
**math** [4] - 14:5, 16:21, 17:1, 17:9
**mathematical** [1] - 32:9
**matter** [6] - 3:2, 3:11, 12:15, 14:6, 18:6, 35:9
**matters** [4] - 11:19, 12:19, 15:18, 31:23
**mean** [12] - 12:10, 13:17, 16:17, 17:4, 17:5, 17:6, 23:1, 23:21, 24:1, 24:15, 24:20, 25:19
**meaningless** [1] - 15:21
**means** [1] - 11:20
**mechanism** [1] - 22:11
**Messrs** [3] - 2:3, 2:7, 2:20
**met** [1] - 7:11
**methods** [1] - 19:2
**MIERS** [1] - 4:16
**Miers** [2] - 2:21, 4:15
**might** [4] - 11:7, 28:12, 32:20, 33:8
**millions** [2] - 21:23, 21:24
**MILLS** [1] - 4:5
**Mills** [2] - 2:11, 2:12
**mills** [1] - 4:5
**mind** [2] - 6:2, 33:3
**minimal** [1] - 15:8
**ministry** [4] - 13:1, 13:23, 22:4, 22:5
**minute's** [1] - 23:17
**moment** [1] - 6:20
**Monday** [1] - 5:24
**money** [18] - 17:24, 18:3, 18:20, 21:4, 21:8, 22:4, 22:11, 22:13, 24:20, 24:23, 25:9, 25:13, 26:2, 27:3, 27:8, 27:12, 27:16
**monies** [4] - 9:25, 10:4, 20:24, 25:23
**monthly** [1] - 24:16
**months** [1] - 19:20
**motion** [5] - 6:2, 6:8, 6:10, 6:12, 6:15, 6:21, 9:11, 12:5, 28:24, 29:2, 31:4, 33:2, 33:18
**move** [2] - 9:10, 9:13
**Mowrey** [14] - 2:20,

4:9, 9:22, 10:7, 11:5, 11:11, 13:21, 14:11, 14:15, 16:6, 18:24, 26:21, 33:18, 34:1
**MOWREY** [14] - 4:10, 11:12, 13:8, 14:24, 16:12, 16:15, 16:23, 17:2, 19:4, 22:14, 25:15, 26:13, 33:19, 34:2
**MR** [29] - 3:21, 3:23, 4:1, 4:3, 4:5, 4:10, 4:12, 4:14, 9:5, 11:12, 13:8, 13:25, 14:12, 14:24, 16:3, 16:12, 16:15, 16:23, 17:2, 17:19, 18:11, 19:4, 22:14, 25:15, 26:13, 26:17, 33:19, 33:25, 34:2
**MS** [1] - 4:16
**Mullis** [1] - 4:4
**MURPHY** [2] - 1:2, 1:3
**Murphy** [2] - 3:2, 3:3
**Murphys** [1] - 17:23
**mwoodward@stanleylawgroup.com** [1] - 2:10

### N

**necessarily** [1] - 32:1
**necessary** [1] - 30:7
**need** [4] - 20:7, 31:3, 33:17, 33:23
**needed** [1] - 24:17
**never** [2] - 19:20, 20:11
**Newark** [1] - 11:18
**news** [1] - 24:22
**NGOs** [1] - 23:15
**NO** [1] - 1:5
**nondisclosure** [1] - 29:11
**nongovernmental** [1] - 23:16
**normally** [1] - 5:8
**North** [2] - 2:4, 2:8
**noted** [2] - 19:8, 19:13
**notice** [1] - 23:17
**notified** [3] - 5:10, 19:22, 19:24
**notion** [1] - 27:17
**number** [8] - 3:10, 14:3, 15:25, 23:21, 25:17, 25:20, 25:21, 25:22
**numbers** [2] - 12:14, 14:4
**numerous** [1] - 5:12

### O

**object** [8] - 8:9, 8:11, 30:21, 30:22, 31:3, 31:8, 31:17
**objected** [3] - 7:23, 19:14, 30:16
**objecting** [2] - 18:23, 31:12
**objection** [4] - 23:24, 30:25, 31:2, 31:19
**objections** [7] - 17:22, 20:18, 20:19, 20:21, 30:18, 30:23, 31:14
**objective** [2] - 17:1, 32:3
**obtain** [2] - 6:3, 23:4
**obviously** [1] - 25:23
**occurs** [1] - 29:23
**OF** [3] - 1:1, 1:12, 35:1
**offices** [1] - 23:2
**Official** [1] - 1:24, 35:3, 35:17
**OFFICIAL** [1] - 35:1
**once** [1] - 29:13
**one** [24] - 9:12, 11:3, 12:3, 12:25, 13:17, 14:7, 14:9, 14:12, 15:4, 15:15, 15:16, 15:17, 15:18, 15:21, 15:25, 16:15, 22:16, 22:25, 23:1, 24:7, 25:16, 27:10, 27:14
**opinion** [2] - 6:16, 29:15
**opportunity** [3] - 6:9, 8:25, 12:5
**order** [5] - 6:13, 29:9, 31:4
**organization** [2] - 25:19, 27:23
**organizations** [5] - 23:16, 25:12, 25:17, 26:1, 26:6
**ourselves** [1] - 18:2
**outline** [1] - 6:24
**outside** [4] - 15:2, 15:10, 28:2, 31:2
**overbreadth** [2] - 7:24, 31:6
**overbroad** [1] - 31:7

### P

**Page** [2] - 9:8, 9:22
**page** [2] - 24:14, 35:9
**paper** [4] - 12:6, 12:16, 27:11, 27:13
**parsing** [1] - 32:1, 32:15

**part** [4] - 8:4, 12:13, 17:6, 21:5
**particular** [3] - 9:25, 15:21, 16:9
**parties** [3] - 6:14, 10:23, 32:18
**partner** [1] - 27:14
**partners** [4] - 18:19, 25:9, 26:11, 26:22
**party** [1] - 9:9
**PAT** [1] - 1:8
**Paul** [2] - 2:20, 4:11
**pending** [2] - 27:24, 28:24
**people** [6] - 18:13, 22:7, 22:11, 24:21, 24:22, 28:6
**people's** [1] - 25:4
**per** [2] - 9:9, 9:20
**percent** [1] - 26:19
**perhaps** [2] - 5:9, 6:19
**period** [3] - 4:19, 9:20, 13:2
**peripheral** [1] - 12:19
**permission** [1] - 6:3
**permitted** [1] - 30:13
**person** [1] - 24:19
**phone** [1] - 11:5
**phrased** [1] - 32:14
**Phyllis** [1] - 3:3
**PHYLLIS** [1] - 1:3
**pieces** [1] - 29:1
**pin** [1] - 10:11
**plaintiff** [4] - 8:17, 12:14, 15:21, 19:9
**PLAINTIFFS** [1] - 2:2
**Plaintiffs** [1] - 1:5
**plaintiffs** [22] - 3:3, 3:15, 3:19, 4:18, 5:15, 5:21, 6:1, 7:4, 7:6, 7:19, 7:22, 8:1, 8:13, 12:7, 12:11, 13:6, 13:9, 13:10, 24:11, 28:1, 28:11, 33:5
**plaintiffs'** [6] - 6:21, 13:12, 16:19, 22:22, 24:3, 33:2
**plan** [1] - 23:11
**plant** [1] - 26:1
**point** [9] - 5:18, 6:7, 7:8, 11:12, 15:25, 17:19, 24:4, 28:1, 33:11
**pointed** [1] - 19:13
**points** [1] - 8:21
**position** [6] - 9:2, 12:6, 12:8, 28:19, 31:21, 33:15
**positions** [2] - 6:7,

6:24
**possession** [3] - 18:9, 20:24, 24:4
**possibility** [1] - 32:22
**possible** [2] - 10:7, 29:16
**potentially** [1] - 33:8
**power** [1] - 26:25
**Practices** [1] - 4:24
**premature** [3] - 5:9, 6:12, 28:23
**present** [1] - 3:17
**press** [1] - 14:7
**pretty** [2] - 32:8, 32:10
**previous** [1] - 19:18
**previously** [2] - 19:10, 20:10
**primary** [2] - 25:13, 25:19
**principal** [1] - 3:7
**principals** [1] - 26:24
**privilege** [1] - 29:11
**problems** [2] - 19:21, 20:9
**procedure** [2] - 15:8, 30:21
**procedures** [1] - 19:15
**Proceedings** [1] - 1:22
**proceedings** [2] - 34:5, 35:8
**proceeds** [1] - 29:21
**process** [3] - 5:18, 31:24
**produce** [2] - 21:20, 31:2
**produced** [5] - 13:15, 20:22, 20:23, 22:18
**producing** [1] - 24:10
**production** [3] - 8:5, 27:2, 28:17
**profit** [1] - 26:2
**program** [1] - 14:6
**project** [2] - 13:4, 13:22, 16:9, 18:7
**proof** [2] - 14:22, 15:23
**properly** [1] - 14:19
**propose** [1] - 8:3
**propound** [1] - 6:4
**propounded** [2] - 7:4, 31:15
**protective** [2] - 29:9, 31:4
**prove** [5] - 9:16, 11:14, 12:21, 22:6, 25:5
**provide** [4] - 18:6, 28:19, 32:19, 33:12
**provided** [11] - 7:19,

8:7, 14:16, 14:21, 17:12, 17:16, 18:10, 18:11, 20:10, 20:19, 21:13
**providing** [2] - 30:16, 31:14
**proving** [3] - 8:22, 10:24, 15:24
**provision** [1] - 6:13
**pschuster@ lockelord.com** [1] - 2:24
**PUNNOSE** [2] - 1:8, 1:8
**purpose** [6] - 8:6, 8:14, 10:22, 13:11, 19:3, 27:8
**purposes** [7] - 3:11, 7:16, 7:22, 7:25, 22:1, 26:3, 29:25
**pursestrings** [2] - 27:1, 33:15
**pursuant** [2] - 4:24, 35:6
**putative** [1] - 3:5
**putting** [1] - 33:6

**Q**

**quarterly** [2] - 24:16
**quickly** [1] - 29:16
**quote** [1] - 15:9

**R**

**raise** [1] - 24:23
**raised** [2] - 25:23, 31:13
**raising** [1] - 24:20
**rarely** [1] - 15:9
**rather** [1] - 17:25
**read** [1] - 6:21
**readily** [1] - 27:18
**ready** [1] - 27:15
**real** [1] - 25:4
**really** [8] - 8:14, 8:19, 10:11, 18:17, 27:17, 27:25, 28:5, 28:6
**realtime** [1] - 1:22
**Realtime** [1] - 35:3
**reason** [2] - 16:15, 16:16
**reasons** [1] - 5:7
**receive** [1] - 21:23
**received** [7] - 5:5, 5:11, 7:6, 7:7, 7:15, 13:3, 17:13, 19:1, 19:12, 24:12, 29:25, 30:3
**recently** [2] - 23:6,

24:10
**recite** [1] - 31:9
**record** [1] - 3:1
**recorded** [1] - 1:22
**records** [1] - 18:7
**refine** [1] - 7:9
**regard** [1] - 13:4
**regarding** [4] - 20:1, 20:3, 20:11, 24:13
**regardless** [1] - 27:23
**regularly** [1] - 24:12
**regulations** [1] - 35:10
**related** [1] - 26:18
**relates** [3] - 3:12, 12:25
**reliance** [1] - 15:10
**relieve** [1] - 10:23
**reluctance** [1] - 7:11
**reluctant** [1] - 22:21
**report** [4] - 7:22, 11:7, 14:3, 14:9
**reported** [1] - 35:8
**Reporter** [3] - 1:24, 35:4, 35:17
**REPORTER** [1] - 35:1
**reports** [1] - 13:25
**reprehensible** [1] - 24:24
**representation** [1] - 27:7
**request** [16] - 5:16, 8:4, 9:10, 9:14, 10:21, 13:11, 15:10, 15:20, 17:4, 19:19, 20:6, 20:7, 32:2, 32:5, 32:10, 32:12
**requested** [4] - 8:10, 21:18, 24:9, 28:18
**requests** [38] - 5:12, 5:13, 5:16, 5:22, 6:1, 6:4, 8:3, 8:13, 9:9, 10:13, 11:15, 11:16, 11:18, 12:9, 12:16, 12:18, 12:20, 13:12, 14:18, 15:7, 15:12, 15:13, 15:23, 17:22, 19:9, 19:12, 19:18, 20:2, 20:14, 20:20, 30:6, 31:13, 31:15, 31:20, 31:21, 31:25, 32:7, 32:13
**require** [5] - 16:18, 17:5, 31:1, 32:1, 32:14
**required** [1] - 22:21
**requires** [4] - 6:14, 12:12, 16:21, 17:22
**requiring** [2] - 15:8, 15:9
**reread** [1] - 9:21

**reserved** [1] - 30:17
**resolve** [1] - 6:20
**resolved** [1] - 5:22
**respect** [9] - 13:18, 15:17, 16:1, 17:3, 17:7, 19:16, 19:17, 19:25, 20:13
**respected** [1] - 23:3
**respects** [1] - 5:9
**respond** [4] - 12:5, 16:3, 19:6, 33:18
**responded** [2] - 19:11, 19:19
**responding** [1] - 32:16
**response** [16] - 6:10, 6:22, 6:25, 7:5, 15:8, 22:9, 28:21, 29:1, 29:7, 29:8, 29:13, 30:10, 33:1, 33:6, 33:13, 33:22
**responses** [4] - 19:18, 19:21, 20:9, 32:13
**retained** [3] - 22:24, 22:25, 24:6
**RICO** [1] - 4:23
**rid** [1] - 12:18
**rmowrey@lockelord. com** [1] - 2:24
**RMR** [2] - 1:23, 35:17
**Rob** [1] - 4:9
**Robert** [1] - 2:20
**Rock** [1] - 2:18
**Ross** [1] - 2:22
**rubber** [1] - 26:1
**rule** [1] - 10:23
**Rule** [2] - 8:16, 16:14
**rules** [2] - 30:20, 31:1
**ruling** [2] - 6:11, 28:23

**S**

**Saturday** [1] - 19:23
**scammers** [1] - 24:22
**scheduled** [2] - 5:6, 5:19
**Schuster** [2] - 2:20, 4:11
**SCHUSTER** [1] - 4:12
**second** [2] - 13:20, 16:4
**Section** [1] - 35:6
**see** [1] - 15:19
**seek** [4] - 3:4, 7:9, 29:9, 33:5
**seeking** [2] - 8:2, 8:13
**seeks** [1] - 13:1
**seem** [1] - 26:22
**sends** [1] - 21:4
**sensitivity** [1] - 23:14

sent [3] - 7:1, 10:15, 19:9
separate [1] - 7:5
September [2] - 1:14, 35:12
set [9] - 5:11, 8:2, 14:17, 17:21, 19:12, 19:14, 19:16, 19:25
sets [2] - 4:22, 7:5
sham [1] - 25:3
share [1] - 27:16
sheer [2] - 8:9, 16:16
shell [2] - 22:2, 22:15
shorthand [1] - 1:22
show [8] - 9:24, 10:8, 10:9, 10:10, 10:12, 11:7, 14:14, 18:2
showing [2] - 10:3, 20:24
Shults [1] - 2:17
shut [2] - 23:17, 23:21
side [4] - 6:18, 8:25, 10:21, 30:1
signature [1] - 14:19
signed [3] - 11:21, 12:16
similarly [3] - 1:4, 3:5, 4:19
simple [1] - 10:17
simplicity [1] - 32:4
simplified [1] - 15:8
simplifying [1] - 14:22
simply [3] - 10:13, 12:2, 32:9
sincerely [3] - 24:25, 28:4, 28:6
site [1] - 12:12
situated [3] - 1:4, 3:5, 4:19
six [2] - 8:4, 30:6
six-part [1] - 8:4
smart [1] - 28:6
solicitation [1] - 21:25
solicited [1] - 6:23
someone [2] - 16:21, 26:11
somewhat [1] - 22:2
somewhere [2] - 6:5, 10:15
soon [1] - 28:7
sorry [2] - 4:7, 14:12
sort [3] - 17:15, 24:14, 27:11
sought [2] - 8:15, 30:15
sounding [1] - 4:23
source [2] - 25:14, 27:16
special [2] - 32:24,

33:9
specific [2] - 21:25, 27:8
specifically [3] - 21:18, 23:20, 24:9
specified [2] - 10:1, 10:5
spend [2] - 21:8, 25:9
spending [1] - 22:12
spent [12] - 7:14, 10:4, 10:16, 17:24, 18:2, 18:20, 20:24, 21:9, 27:3, 27:8, 29:22, 30:3
spreadsheet [3] - 13:13, 13:14, 14:13
stand [1] - 6:17
standards [1] - 22:19
standpoint [1] - 25:6
Stanley [24] - 2:7, 2:8, 3:20, 9:4, 11:13, 12:20, 13:22, 16:4, 16:5, 17:12, 19:7, 19:10, 19:13, 19:16, 19:17, 19:21, 19:24, 19:25, 20:6, 20:15, 21:9, 21:18, 26:17, 33:24
STANLEY [9] - 3:21, 9:5, 13:25, 14:12, 16:3, 17:19, 18:11, 26:17, 33:25
state [2] - 13:10, 20:16
States [5] - 21:3, 23:18, 35:4, 35:6, 35:11
STATES [1] - 1:1
statutory [1] - 4:23
stay [2] - 28:8, 31:18
stenographically [1] - 35:8
step [2] - 27:24, 28:10
still [2] - 6:16, 21:14
stipulate [1] - 32:16
stipulation [2] - 32:17, 32:20
straightforward [1] - 32:8
Street [1] - 1:24
stuff [1] - 23:15
styled [1] - 3:2
subject [2] - 23:16, 30:23
sue [1] - 21:10
sued [2] - 26:24, 28:11
suggest [1] - 33:16
Suite [4] - 2:8, 2:12, 2:17, 2:22
supplied [1] - 13:6
support [2] - 9:1,

32:20
suspicious [1] - 28:13
system [1] - 15:23

## T

table [1] - 28:24
task [1] - 23:10
TELECONFERENCE [1] - 2:1
telephone [6] - 3:12, 3:14, 5:6, 5:19, 6:6, 6:14
TELEPHONE [1] - 1:12
terms [1] - 12:8
Texas [3] - 2:9, 2:13, 2:22
THE [33] - 1:13, 2:2, 2:15, 3:1, 3:22, 3:24, 4:2, 4:4, 4:7, 4:11, 4:13, 4:15, 4:17, 11:10, 12:24, 13:20, 14:11, 14:15, 16:5, 16:13, 16:21, 16:24, 17:11, 18:5, 18:24, 21:23, 25:8, 26:4, 26:16, 26:20, 33:21, 34:1, 34:3
themselves [3] - 14:7, 15:11, 24:23
they've [2] - 18:3, 18:21
third [6] - 8:2, 19:12, 19:14, 19:16, 19:25, 20:7
Thomas [1] - 2:11
Thompson [1] - 2:20
thoroughly [1] - 29:15
thoughts [1] - 29:18
thousand [1] - 11:24
three [1] - 16:25
tied [1] - 26:7
ties [1] - 26:6
TIMOTHY [1] - 1:13
Title [1] - 35:6
tmills@ millsandwilliams. com [1] - 2:14
today [7] - 3:11, 3:15, 5:7, 29:20, 33:17, 33:21, 33:24
together [2] - 14:4, 14:10
Tom [1] - 4:4
took [1] - 9:21
tools [4] - 13:1, 13:23, 22:4, 22:5
top [1] - 27:20
total [2] - 9:19, 10:14

totally [2] - 11:16, 12:22
track [2] - 18:25, 19:2
Trade [1] - 4:24
trail [2] - 27:11, 27:13
TRANSCRIPT [1] - 1:12
transcript [3] - 9:22, 35:7, 35:9
transfers [1] - 9:16
tremendous [2] - 29:3, 29:5
trial [10] - 7:13, 10:8, 10:10, 10:23, 10:25, 11:2, 12:19, 14:22, 16:11, 31:24
tried [1] - 17:20
true [2] - 27:5, 35:7
try [1] - 33:16
trying [4] - 7:9, 8:19, 10:11, 18:17
Tuesday [2] - 5:25, 20:5
tuned [2] - 28:8, 31:18
turned [1] - 16:7
two [9] - 7:4, 16:24, 19:8, 19:20, 20:2, 20:14, 27:9, 33:19, 33:21
type [1] - 15:6
types [1] - 8:15
typically [1] - 11:20

## U

U.S [4] - 23:5, 23:12, 24:5, 26:9
ultimately [1] - 12:12
under [2] - 16:14, 16:23
understood [1] - 5:22
undisputable [1] - 31:23
undisputed [1] - 31:23
United [5] - 21:3, 23:18, 35:4, 35:6, 35:11
UNITED [1] - 1:1
unjust [1] - 4:25
unless [1] - 15:21
up [9] - 12:14, 16:24, 17:17, 18:2, 21:1, 22:16, 29:12, 33:6, 33:23
USA [4] - 21:2, 21:3, 22:25, 25:2
usable [1] - 7:10

## V

various [5] - 7:21, 7:24, 7:25, 9:16, 13:14
vault [1] - 27:14
verify [3] - 13:16, 16:19, 22:12
VIA [1] - 2:1
via [2] - 1:22, 3:14
violates [1] - 18:15
violations [1] - 4:23
volume [2] - 8:10, 16:16
VS [1] - 1:6

## W

wait [1] - 30:9
wants [1] - 15:19
wbassett@ bassettlawfirm. com [1] - 2:6
Wednesday [2] - 20:4, 20:5
week [2] - 5:10, 5:24
weeks [2] - 33:19, 33:21
West [1] - 2:17
WESTERN [1] - 1:1
Western [1] - 35:5
whatsoever [1] - 26:6
whole [1] - 27:25
wholly [2] - 30:1, 30:3
Williams [1] - 2:12
willing [2] - 27:15, 31:11
wire [1] - 9:16
withdraw [3] - 5:15, 5:21, 6:1
withdrawn [1] - 20:6
withheld [3] - 20:16, 20:18, 20:20
Woodward [2] - 2:7, 3:22
WOODWARD [1] - 3:23
Woody [1] - 2:3
woody [1] - 3:25
word [1] - 25:20
works [1] - 28:11
Wright [2] - 10:22, 11:18

## Y

year [1] - 14:1
years [3] - 14:14, 16:7, 16:10
Yohannan [2] - 26:7,

26:18
**YOHANNAN** [1] - 1:8
**you-all** [1] - 34:3

## Z

**zero** [6] - 10:2, 10:3,
17:20, 18:3, 18:4