IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GARLAND D. MURPHY, III, M.D., and
PHYLLIS MURPHY, Individually and on
behalf of all others similarly situated                              PLAINTIFFS

V.                              CASE NO. 5:17-CV-5035

GOSPEL FOR ASIA, INC.; GOSPEL FOR ASIA-INTERNATIONAL;
K.P. YOHANNAN; GISELA PUNNOSE; DANIEL PUNNOSE;
DAVID CARROLL, and PAT EMERICK                                       DEFENDANTS

## OPINION AND ORDER

Currently before the Court are a Motion for Leave to Serve Discovery (Docs. 32, 33)[1] filed by Plaintiffs Garland D. Murphy, III, M.D. and Phyllis Murphy, a Response in Opposition (Doc. 39) filed by Defendants Gospel for ASIA, Inc. ("GFA"), Gospel for Asia-International, K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick (collectively, Defendants), and Plaintiffs' Reply in Support (Doc. 42). The Court, having previously been notified of the discovery dispute at the heart of these two filings, held a telephonic hearing on September 22, 2017, at which time it had the parties provide more information about the scope of the present dispute and past efforts to obtain the information that Plaintiffs now seek to discover through the proposed Requests for Admission (RFA). For the reasons given below, Plaintiffs' Motion is **GRANTED**.

The underlying lawsuit in this case concerns Plaintiffs' allegations that Defendants and their international partners have defrauded their donors by diverting donations that

---

[1] Because the Motion for Leave to Serve Discovery (Doc. 33) contains confidential information, it was filed under seal with the Court. Therefore, Doc. 32 is a redacted version of the same Motion.

1

were earmarked for specific purposes to different uses without these donors' knowledge. Plaintiffs seek to represent a class of such donors and have brought several causes of action, including civil RICO and fraud, against Defendants.

The matter currently before the Court, however, concerns a discovery dispute that has arisen between the parties regarding information central to this case: namely, information regarding where donated monies were sent and for what purposes they were used. As is obvious given the nature of this case, Plaintiffs' theory of fraud is premised on demonstrating that Defendants and their international partners did not spend the donated money in accordance with their donors' wishes and, in doing so, violated promises allegedly made to these donors to do exactly that.

In order to demonstrate that these donations were not spent in conformity with these alleged promises, Plaintiffs served two prior sets of discovery on Defendants. Both of these sets, which included interrogatories and, by the Court's count, at least 75 requests for production, sought to obtain information and documents that would either establish or refute Plaintiffs' theory about where the donated money went. Given the information provided under seal to the Court and discussed during the September telephone conference, it is clear that Plaintiffs' prior attempts to discover this crucial information were only partially successful. In short, these interrogatories and requests for production provided a wealth of information that illustrated how much money was collected by Defendants. But, this discovery information did nothing to clear up the confusion as to how this accumulated money was subsequently spent.

As such, Plaintiffs now once again seek answers to the same questions that they have been asking for months: was this donated money diverted to other causes and do

Defendants have information or documents that would prove how the money was spent? In an effort to come at the problem from a different angle, however, Plaintiffs now seek to serve on the Defendants what amounts to over 1000 RFAs. While startling upon first read, this sizable number of RFAs consists entirely of the same six RFAs repeated for each of 179 different codes representing different categories of donations (e.g. a code for pigs and a separate code for bicycles).[2] Each of these sets of RFAs is accompanied by a Request for Production asking for any documents in the Defendants' possession that would reflect how this earmarked money was spent.

In their Response in Opposition, Defendants object to this proposed set of discovery on several grounds, including the sheer number of requests, the improper nature of these requests given the purpose of Rule 36 of the Federal Rules of Civil Procedure, and the lack of need for these requests now that Defendants' field partners have recently committed to providing information relevant to Plaintiffs' inquiries. *See* Doc. 39, pp. 2-11. The Court finds these reasons unpersuasive. It will address each of Defendants' concerns in turn.

---

[2] For each of the 179 different codes, Defendants are asked to admit the following:
  a. Admit that for the period from January 1, 2009 through March 31, 2016, GFA received $_____ in contributions from donors with donor designations for Project Code _____.
  b. Admit that from January 1, 2009 through March 31, 2016, GFA recorded donor contributions for Project Code _____ in the amount of $ _____.
  c. Admit that GFA did not spend the $_____ on _____ (particular item).
  d. Admit that GFA's "field partners" did not spend the $____ on _____ (particular item).
  e. Admit that you have produced to Plaintiffs all evidence you possess regarding how the $_____ designated by donors for (particular item) was spent.
  f. Admit that you have no evidence as to how the $_____ for (particular item) was spent.

NOTE: Alterations were made to preserve the confidentiality of information that has been submitted under seal to the Court.

3

## A. The Number of RFAs

The first objection raised by Defendants concerns the sheer number of RFAs in the proposed set of discovery. Defendants cite cases where courts have refused leave to serve or granted protective orders where the number of requested admissions was quite large. Indeed, the Court found these cases as well in its own research. Of course, Defendants ignored other cases from around the country where courts allowed a party to serve a large number of requests for admission. *See, e.g., Layne Christensen Co. v. Purolite Co.*, 2011 WL 381611, at *1 (D. Kan. Jan. 25, 2011) (Rushfelt, Mag. J.) (denying a protective order that would have relieved a party from responding to 626 RFAs); *Gen. Elec. Co. v. Prince*, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007) (Dolinger, Mag. J.) (denying a protective order for 573 RFAs); *Davis v. Harding*, 2013 WL 4509491, at *1 (W.D. Wis. Aug. 26, 2013) (Crocker, Mag. J.) (denying motion to quash 826 RFAs); *Sequa Corp. v. Gelmin*, 1993 WL 350029, at *1 (S.D.N.Y. Sept. 7, 1993) (Dolinger, Mag. J.) (denying protective order to a party served with 1441 separate RFAs); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 3171768, at *1-6 (D. Kan. Oct. 29, 2007) (Bostwick, Mag. J.) (denying in large part a protective order to a party served with 1351 RFAs).

In all of the above-cited cases, and in the cases cited by Defendants where the court prohibited the large number of RFAs, it was not the sheer number of RFAs that led the courts to their decisions; rather, it was the number of requests in light of the complexity of the case and the needs of the parties. Of course, this weighing of the need for discovery in light of the complexity of the case should come as no surprise given that these are the same factors considered when deciding whether to grant a protective order under Rule

4

26(c)(1). See also Fed. R. Civ. P. 26(b) (discussing the proportionality standard used in determining the scope of allowable discovery).

After reading the briefings by both parties and discussing the case during the telephone conference, the Court finds that the complex nature of this case and Plaintiffs' prior inability to obtain this crucial discovery information using more traditional interrogatories and requests for production warrant this large number of RFAs. This proposed class action lawsuit involves a large charitable organization and many international partners. As such, this is not a simple case involving two parties and a limited amount of discoverable material. The very fact that 179 different categories of expenditures exist reinforces the Court's finding that this number of RFAs is warranted.

### B. Purpose of Rule 36

Defendants' next objection to this proposed discovery is that these RFAs would flout the purpose of Rule 36. The Court agrees with Defendants that the purpose of a Rule 36 RFA is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." *Hardy v. Bartmess*, 2011 WL 13195971, at *1 (E.D. Ark. Apr. 1, 2011) (citation omitted). However, the Court disagrees that the very fact that this issue (i.e. whether Defendants spent the money the way they allegedly promised to) will likely be one for trial *automatically* precludes this from being the subject of a Rule 36 RFA.

The Advisory Committee's Notes to Rule 36 provide a better interpretation of the purpose of Rule 36. The Notes to the 1970 amendment to Rule 36 state that "[a]dmissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." It is clear to the Court that Plaintiffs are attempting through this proposed set of discovery to do

exactly what the Rule permits—to facilitate proof with respect to issues that cannot be eliminated from the case.

That the use of RFAs for this very purpose is permitted by the Rule is further supported by the fact that subsequent revisions to Rule 36 have never included a prohibition on using RFAs for issues that might be disputed at trial (i.e. matters properly reserved to the finders of fact). Rather, the opposite is true. Rule 36(a)(5) specifically addressed this issue by stating that "[a] party must not object solely on the ground that the request presents a genuine issue for trial." Fed. R. Civ. P. 36(a)(5). In fact, both before and after this 1970 amendment to Rule 36, courts have held that even items going to the heart of liability can be proper subjects for RFAs. *See, e.g.*, *Johnstone v. Cronlund*, 25 F.R.D 42, 44 (E.D. Pa. 1960) ("We do not think that the requests can be avoided because the question asked may or may not be crucial to liability."); *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3d Cir. 1992) (noting that a party served with a request for admission of a fact that it knows to be true must admit the fact "even if that admission will gut its case. . . .").

Thus, there is nothing *per se* improper about these RFAs. While these requests perhaps are presented to the Court in an unusual posture, the Court will not deny these requests solely because they concern facts which may be matters for trial. If Defendants deny the facts that they are asked to admit or, after reasonable inquiry, if they do not have information by which to either admit or deny these facts, then that is the answer that should be provided.

6

### C. Field Partners' Recent Commitment to Provide Information

Finally, Defendants object to these RFAs because they argue that they have been rendered unnecessary by recent commitments by some of Defendants' international field partners to provide information related to Plaintiffs' questions and because they personally do not have control over what their international field partners do. These objections are also unpersuasive to the Court.

As an initial matter, the Court applauds the Defendants for acknowledging and committing to carry out their duty under Rule 26(e) to supplement their prior answers to the interrogatories that were served on them in Plaintiffs' First and Second Discovery Sets. However, these discovery devices are not mutually exclusive. *See, e.g.*, 8B Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure Civ.* § 2253 (3d ed. 2017) ("a party need not elect between Rule 36 and the other rules and it may use the various devices at the same time."). Therefore, the fact that Defendants might now have the ability to provide a supplemented answer to the previously served interrogatories does not alter the Court's view that these RFAs are proper given the information that has been submitted to it by the parties.

Moreover, Defendants contend that the requested information is largely in the hands of third parties over whom Defendants exercise no control. As the Court advised Defendants during the telephone conference, if, after reasonable inquiry, Defendants do not have within their possession information by which they could honestly admit or deny these RFAs, then that is the answer that should be provided. *See, e.g.*, Wright & Miller, *Fed. Practice and Procedure* § 2261 (stating that where a party does not know whether the matter it is asked to admit is true or not, it may reply that "it cannot truthfully admit or

7

deny the matter"). If, in fact, it turns out that Defendants are correct that they do not have the means by which to document how their international field partners spent the money, then the replies to Plaintiffs' RFAs will be very similar and simple—further supporting the Court's view that this request is not unduly burdensome in light of the nature of this case.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to Serve Discovery (Docs. 32, 33) is **GRANTED**.

**IT IS SO ORDERED** on this 21st day of November, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE