United States District Court
Western District of Arkansas
Fayetteville Division

| | | |
|---|---|---|
| Garland D. Murphy, III, M.D., | § | |
| and Phyllis Murphy, | § | |
| individually and on behalf of | § | |
| all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case no. **5:17-CV-5035 ELW** |
| | § | |
| Gospel for Asia, Inc., | § | |
| Gospel for Asia-International, | § | |
| K.P. Yohannan, Gisela Punnose, | § | |
| Daniel Punnose, David Carroll, | § | |
| and Pat Emerick, | § | |
| | § | |
| Defendants. | § | |

## Settlement Agreement And Release

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Garland D. Murphy, III, MD and Phyllis Murphy, on behalf of themselves and all others similarly situated, respectfully submit this Settlement Agreement and Release, executed by them and by Defendants Gospel for Asia, Inc., K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick.

Dated:  February 28, 2019

Respectfully submitted,

/s/ *Marc R. Stanley*
Marc R. Stanley (admitted *pro hac vice*)
marcstanley@mac.com
Martin Woodward (admitted *pro hac vice*)
mwoodward@stanleylawgroup.com
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214.443.4300
214.443.0358 (fax)

Woodson W. Bassett III
Arkansas Bar No. 77006
wbassett@bassettlawfirm.com
James Graves
Arkansas Bar No. 95172
jgraves@bassettlawfirm.com
**BASSETT LAW FIRM LLP**
221 North College Avenue
P.O. Box 3618
Fayetteville, Arkansas 72702
479.521.9996
479.521.9600 (fax)

*Counsel for Plaintiffs and the Class*

Tom Mills (admitted *pro hac vice*)
tmills@millsandwilliams.com
**MILLS AND WILLIAMS, LLP**
5910 N. Central Expressway, Suite 980
DALLAS, TEXAS 75206
214.265.9265
214.361.3167 (FAX)

*Of Counsel for Plaintiffs and the Class*

**Certificate of Service**

The undersigned hereby certifies that true and correct copies of the foregoing were served on February 28, 2019, on the following counsel of record via the method indicated:

| | |
|---|---|
| Harriet E. Miers, via email: | hmiers@lockelord.com |
| Robert T. Mowrey, via email: | rmowrey@lockelord.com |
| Paul F. Schuster, via email: | pschuster@lockelord.com |
| Cynthia K. Timms, via email: | ctimms@lockelord.com |
| Matthew H. Davis, via email: | mdavis@lockelord.com |
| Steven Shults, via email: | sshults@shultslaw.com |
| John T. Adams, via email: | jadams@shultslaw.com |

/s/ *Marc R. Stanley*
Marc R. Stanley

3

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into between and among Plaintiffs Garland D. Murphy, III, MD, and Phyllis Murphy ("Murphy Plaintiffs" or "Plaintiffs"), on behalf of themselves and all Settlement Class Members as defined herein on the one hand, and Gospel for Asia, Inc. ("GFA-USA"), Gospel for Asia-International[1], K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick (Yohannan, Gisela Punnose, Daniel Punnose, Carroll, and Emerick, collectively, the "Individual Defendants") (GFA-USA, Gospel for Asia-International, and the Individual Defendants, collectively, the "Defendants"), on the other. Plaintiffs and Defendants are referred to collectively in this Settlement Agreement as the "Parties."

1.    **RECITALS**

1.1.    On February 8, 2016, Matthew Dickson and Jennifer Dickson ("Dickson Plaintiffs") filed their Original Class Action Complaint, a putative nationwide class action in the United States District Court for the Western District of Arkansas, Fayetteville Division (Case No. 5-16-cv-5027-PKH), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), and unjust enrichment (the "Dickson Litigation").

1.2.    On November 28, 2018, the Dickson Litigation was dismissed without prejudice because the Dickson Plaintiffs' claims were subject to binding arbitration.

1.3.    On February 16, 2017, Murphy Plaintiffs filed their Original Class Action Complaint, a putative nationwide class action in the United States District Court for the Western District of Arkansas, Fayetteville Division (Case No. 5:17-cv-5035-TLB), alleging violations of RICO, fraud, violations of the ADTPA, and unjust enrichment identical to those in the Dickson Litigation (the "Murphy Litigation").

---

[1] Gospel for Asia-International is not presently in existence.

1.4.    On January 19, 2018, Murphy Plaintiffs filed a motion seeking class certification under Rule 23(b)(3).  Defendants opposed this motion.  On September 10, 2018, the Court issued an opinion and order certifying a nationwide class (as modified in the opinion and order) for alleged RICO violations and an Arkansas subclass for violations of the ADTPA, fraud, and unjust enrichment.

1.5.    The Parties and their counsel engaged in a day-long, in-person settlement conference with the Honorable Erin Wiedemann on January 31, 2019.

1.6.    Defendants' position is that the evidence demonstrates (i) all funds designated to the field were sent to the field and used for ministry purposes; and (ii) no Individual Defendant, as defined herein, received any improper personal gain or enrichment from or related to donated funds.  Without admitting any liability or wrongdoing whatsoever and expressly denying any such liability or wrongdoing and while maintaining they have substantial factual and legal defenses to all claims and class allegations in the Murphy Litigation and Dickson Litigation, Defendants agree to the terms of this Agreement in order to resolve all issues relating to the subject matter of the Released Claims, as defined herein.

## 2.    DEFINITIONS

As used herein, the following terms have the meanings set forth below.

2.1.    "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

2.2.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release, including all exhibits thereto.

2.3.    "Approved Claim" means a Claim submitted by a Settlement Class Member that is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement.

2.4.    "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel by the Court to compensate them (and all other attorneys for Murphy Plaintiffs or the Settlement Class) for their fees and all expenses incurred by Plaintiffs or Class Counsel in connection with the Murphy or Dickson Litigation.

2.5.    "Claim" means a written request for Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form in a form substantially similar to one of the documents attached as Exhibit D to this Agreement or as ultimately approved by the Court.

2.6.    "Claim Form" means documents in forms substantially similar to those attached as Exhibit D to this Agreement or as ultimately approved by the Court.

2.7.    "Claimant" means any Settlement Class Member who submits an Approved Claim pursuant to this Settlement Agreement.

2.8.    "Class Counsel" means the Stanley Law Group, the Bassett Law Firm, and Mills and Williams, LLP.

2.9.    "Class Notice" means the program of notice described in Section 6 of this Agreement to be provided to potential Settlement Class Members, including the Mail Notice, Email Notice, and Website Notice on the Settlement Website, which will notify potential Settlement Class Members about, among other things, their rights to opt out or object to the Settlement, the preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.9.1. "Mail Notice" means the notice that is mailed by the Settlement Administrator to potential Settlement Class Members, in a form substantially similar to Exhibit A to this Agreement and/or as ultimately approved by the Court.

2.9.2. "Email Notice" means the notice that is emailed by the Settlement Administrator to potential Settlement Class Members, in a form substantially similar to <u>Exhibit B</u> to this Agreement and/or as ultimately approved by the Court.

2.9.3. "Website Notice" means the long-form notice that is available to Settlement Class Members on the Settlement Website, in a form substantially similar to <u>Exhibit C</u> to this Agreement and/or as ultimately approved by the Court.

2.10. "Court" means the United States District Court for the Western District of Arkansas.

2.11. "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included. Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.

2.12. Deadlines. As used herein, the Parties agree to the following deadlines, subject to Court approval:

2.12.1. "Notice Deadline" means the last day for the Settlement Administrator to send Mail Notice and Email Notice to potential Settlement Class Members. Mail and Email Notice shall be sent within twenty-one (21) Days after the Court's Preliminary Approval Order.

2.12.2. "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Agreement to be able to object to the Settlement. The Objection Deadline shall be not later than sixty-six (66) Days after the entry of the Preliminary Approval Order.

2.12.3. "Opt Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Agreement in order for a potential Settlement Class Member to be excluded from the Settlement Class.  The Opt-Out Deadline shall be no later than sixty-six (66) Days after the entry of the Preliminary Approval Order.

2.12.4. "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member must be postmarked or submitted electronically, which will be ninety (90) Days after the Notice Deadline.  All Claims postmarked or submitted electronically at the Settlement Website on or before the Claim Deadline shall be timely, and all Claims postmarked or submitted electronically at the Settlement Website after the Claim Deadline shall be untimely and barred from entitlement to any Settlement Relief, but those claims will still be released under this Agreement.

2.12.5. "Final Approval Motion Deadline" means the date by which Class Counsel shall file the motion seeking final approval of the Settlement, including any request for Attorneys' Fees and Expenses.  The Final Approval Motion Deadline shall be no later than seventy-five (75) Days after the entry of the Preliminary Approval Order.

2.13.    "Defendants" means Gospel for Asia, Inc., Gospel for Asia-International, K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick.

2.14.    "Defense Counsel" or "Defendants' Counsel" means the law firm of Locke Lord LLP.

2.15.    "Dickson Litigation" means the civil action styled *Dickson v. Gospel for Asia, Inc., et al.*, No. 5:16-cv-5027-PKH (W.D. Ark.).

2.16.    "Dickson Plaintiffs" means Jennifer Dickson and Matthew Dickson.

2.17.    "ECFA" means the Evangelical Counsel for Financial Accountability.

2.18.    "Final" with respect to the Final Approval Order, the Judgment, and any award of Attorneys' Fees and Expenses means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Expenses) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired.  If the Final Approval Order and/or Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Final Approval Order and/or Judgment shall not become Final.

2.19.    "Final Approval" means the entry of the Judgment after the Final Approval Hearing.

2.20.    "Final Approval Order" means the Order Granting Final Approval of Class Action Settlement and Dismissing Class Claims, to be entered by the Court pursuant to the Settlement and in a form substantially similar to Exhibit F.

2.21.    "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, and whether the Final Approval Order and the Judgment should be entered.  The Parties shall seek to have the Final Approval Hearing on a date not earlier than ninety (90) Days after the entry of the Preliminary Approval Order.

2.22.    "Final Settlement Date" means the earliest date on which both the Final Approval Order and the Judgment are Final (as defined in Section 2.18).  If no appeal has been taken from the Final Approval Order or the Judgment, the Final Settlement Date means the day after the last date on which either the Final Approval Order or the Judgment could be appealed.  If any appeal has been taken from the Final Approval Order or from the Judgment, the Final Settlement Date means the date on which all appeals of either the Final Approval Order or the Judgment, including petitions for rehearing, petitions for rehearing en banc, and petitions for certiorari or any other

form of review, have been finally disposed of in a manner that affirms the Final Approval Order and the Judgment.

2.23.    "GFA-USA" means Gospel for Asia, Inc.

2.24.    "Individual Defendant" means K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, or Pat Emerick.

2.25.    "Judgment" means the judgment to be entered by the Court pursuant to Final Approval Order in a form substantially similar to Exhibit F-1.

2.26.    "Lead Counsel" means Marc R. Stanley and Robert T. Mowrey.

2.27.    "Murphy Litigation" means the civil action styled *Murphy v. Gospel for Asia, Inc., et al.*, No. 5:17-cv-5035-TLB (W.D. Ark.).

2.28.    "Murphy Plaintiffs" means Garland D. Murphy, III, MD, and Phyllis Murphy.

2.29.    "Notice and Administrative Costs" means all reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with providing any notices required by the Class Action Fairness Act, assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Relief.

2.30.    "Plaintiffs" means the Murphy Plaintiffs.

2.31.    "Plaintiffs' Lead Counsel" means Marc R. Stanley.

2.32.    "Preliminary Approval Application" means Murphy Plaintiffs' motion for the Court to approve the Settlement preliminarily and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.

2.33.    "Preliminary Approval Order" means the order in a form substantially similar to Exhibit E and providing for, among other things, preliminary approval of the Settlement as fair, reasonable, and adequate; preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to potential Settlement Class Members; and a finding that the proposed Class Notice is reasonably calculated to apprise potential Settlement Class Members of the pendency of the Murphy Litigation and the Court's certification of the Settlement Class, the material terms of the proposed Settlement, and potential Settlement Class Members' options and rights with respect thereto.

2.34.    "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of the Settlement Agreement.

2.35.    "Released Claims" means the claims released as provided for in Section 10 of the Settlement Agreement.

2.36.    "Released Persons" means Defendants, direct or indirect subsidiaries of Defendants, and each of their respective divisions, parents, subsidiaries, predecessors, investors, parent companies, and Affiliates, whether past or present, and all of the officers, directors, employees, agents, brokers, distributors, representatives, insurers, accountants and attorneys of all such entities.  For the avoidance of doubt, "Released Persons" specifically includes all persons and/or entities identified as potential alter egos of Defendants in the Murphy Litigation [ECF 38], as well as all of their officers, directors, employees, clergy, missionaries, agents, brokers, distributors, representatives, insurers, accountants, and attorneys.

2.37.    "Releasing Persons" means Plaintiffs, all Settlement Class Members, and anyone claiming through them such as heirs, administrators, successors, and assigns.

2.38.    "Request for Exclusion" means a written request from a potential Settlement Class Member that seeks to exclude the potential Settlement Class Member from the Settlement Class and that complies with all requirements in Section 11 of this Agreement.

2.39.    "Settlement" or "Stipulation of Settlement" means the settlement set forth in this Agreement.

2.40.    "Settlement Administrator" means a third-party agent or administrator selected jointly by the Parties to help implement and effectuate the terms of this Settlement Agreement. The Parties agree to propose Heffler Claims Group as the Settlement Administrator.

2.41.    "Settlement Class" or "Class" means the class of persons that will be certified by the Court for settlement purposes only, as more fully described in Section 3.1 herein.

2.42.    "Settlement Class Member" means any person who falls within the definition of the Settlement Class and who has not submitted a valid Request for Exclusion.

2.43.    "Settlement Class Period" shall commence on January 1, 2009, and shall continue through and including the date of the Preliminary Approval Order.

2.44.    "Settlement Class Recovery" means the amount of the Settlement Fund available for distribution to Claimants after payment of Notice and Administrative Costs and any Court-approved Attorneys' Fees and Expenses.

2.45.    "Settlement Fund" means the $37,000,000 described in Section 4.2 that GFA-USA has agreed to pay pursuant to the terms of this Settlement Agreement.

2.46.    "Settlement Relief" means the payment to be made from the Settlement Fund to Settlement Class Members who submit Approved Claims.

2.47.    "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section 6.3 of this Agreement, which shall have the Uniform Resource Locator of www.gfaclassaction.us.

2.48.    "Settling Parties" means, collectively, Defendants, Plaintiffs, and all Releasing Persons.

2.49.    "Special Discovery Master" means David R. Cohen and any individual or entity working on his behalf.

**3.    CLASS DEFINITION AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT**

3.1.    The "Settlement Class" shall be as follows:

> All persons in the United States who donated money to GFA-USA from January 1, 2009 through the date the Settlement Class is certified for Project Codes 1000-4900.    Excluded from the class are unknown donors; Defendants, their subsidiaries, and affiliates; all persons who make a timely election to be excluded from the Class; the Special Discovery Master appointed in this case; and the Judge and Magistrate Judge to whom this case is assigned and their immediate families.

3.2.    This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.  In the event that the Settlement is not finally approved, GFA-USA shall be refunded any money that has not yet been expended.

3.3.    Claims of former employees of GFA-USA may be subject to binding arbitration, as confirmed in the Dickson Litigation.  By agreeing to this Settlement, Defendants do not waive their right to require binding arbitration of any claims asserted by any former employee who submits a timely Request for Exclusion or otherwise attempts to assert a claim against Defendants.

3.4.    Condition No. 1: District Court Approval: The Settlement must be approved by the Court in accordance with the following steps:

3.4.1.    Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice:  After good-faith consultation with Defense Counsel, Class Counsel will present a Preliminary Approval Application to the Court no later than February 28, 2019, or as otherwise set by the Court.  The Preliminary Approval Application shall include Class Notice, in forms substantially similar to Exhibits A, B, and C.  The Settling Parties shall, in good

faith, take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order.

3.4.2.  <u>Settlement Class Certification</u>:  In connection with the proceedings on Preliminary and Final Approval of the proposed Settlement, Plaintiffs shall seek orders (preliminary and final, respectively) certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.4.3.  <u>CAFA Notice</u>:  Defendants shall work with the Class Administrator for it to serve the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).  No later than 10 days before the Final Approval Hearing, Defendants shall file with the Court one or more declarations stating that Defendants have complied with their notice obligations through notices served by the Class Administrator.

3.4.4.  <u>Entry of Preliminary Approval Order</u>:  The Court shall enter a Preliminary Approval Order in a form substantially similar to Exhibit E, which shall, among other things:

(a)    Certify for purposes of settlement a nationwide Settlement Class, approving Plaintiffs as class representatives and appointing Class Counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b)    Preliminarily approve the Settlement as fair, reasonable and adequate;

(c)    Order the issuance of Class Notice to the Settlement Class, and determine that such Class Notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

(d)    Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

(e)      Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind those Settlement Class Members who remain in the Settlement Class;

(f)      Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

(g)      Authorize the Settling Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

(h)      Issue related orders as necessary to effectuate the preliminary approval of the Settlement Agreement.

3.4.5.   Issuance of Class Notice:  Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

3.4.6.   Final Approval Hearing:  In connection with the Preliminary Approval Application, the Parties shall request that the Court schedule and conduct a hearing after dissemination of Class Notice, at which time it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Specifically, Plaintiffs and Class Counsel, after good faith consultation with Defendants and Defense Counsel, shall request that, on or after the Final Approval Hearing, the Court: (i) enter the Final Approval Order and the Judgment; and (ii) determine the Attorneys' Fees and Expenses that should be awarded to Class Counsel as contemplated in the Settlement Agreement, which Attorneys' Fees shall not exceed one-third of the Settlement Fund and which Expenses shall not exceed $750,000.

The Settling Parties agree to support entry of the Final Approval Order and the Judgment.  The Settling Parties will reasonably cooperate with one another in seeking entry of the Final Approval Order and of the Judgment.

3.5.    Condition No. 2:  Finality of Judgment:  The Court shall enter the Final Approval Order and the Judgment in forms substantially similar to Exhibits F and F-1, respectively.  The Final Approval Order and the Judgment must become Final in accordance with Section 2.18 above, and shall, among other things:

(a)    Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in this Murphy Litigation; and (3) venue is proper;

(b)    Finally approve the Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as fair, reasonable, and adequate;

(c)    Finally certify the Settlement Class for settlement purposes only;

(d)    Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

(e)    Enter the Final Approval Order and the Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members and the Murphy Litigation with prejudice;

(f)    Make the Releases in Section 10 of the Settlement Agreement effective as of the date of Final Approval;

(g)    Permanently bar Plaintiffs and all Settlement Class Members who have not opted out of the Settlement from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

(h)     Find that, by operation of the entry of the Judgment, Plaintiffs and all Settlement Class Members who have not opted out of the Settlement shall be deemed to have forever released, relinquished, and discharged the Released Persons from any and all Released Claims;

(i)     Authorize the Settling Parties to implement the terms of the Settlement Agreement, including any non-monetary relief described herein;

(j)     Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Approval Order, and the Judgment, and for any other necessary purpose; and

(k)     Issue related orders to effectuate the Final Approval of the Settlement Agreement and its implementation.

3.6.    <u>Condition Three:  Dismissal</u>:  The dismissal with prejudice of all Released Claims.

**4.     SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF**

4.1.    In consideration for the Releases set forth in Section 10, Defendants will provide the following benefits.

4.2.    <u>Settlement Monetary Consideration</u>:

4.2.1.  GFA-USA will fund a non-reversionary common Settlement Fund of $37,000,000, from which all Settlement Relief, Attorneys' Fees and Expenses, and Notice and Administrative Costs will be deducted.  The Settlement Fund represents the limit and total extent of Defendants' monetary obligations under this Agreement and the Settlement.  In no event shall Defendants' total financial liability with respect to this Agreement and the Settlement exceed $37,000,000.

4.2.2.  GFA-USA will fund the Settlement Fund as follows: (a) within thirty (30) Days following entry of the Preliminary Approval Order, GFA-USA will transfer $26,000,000 to

the Settlement Administrator (via wire instructions provided by the Settlement Administrator to GFA-USA) to an interest-bearing escrow account; and (b) GFA-USA will raise $11,000,000 within twelve (12) months of the date of the entry of the Final Approval Order, which will be transferred to the Settlement Administrator (via wire instructions provided by the Settlement Administrator to GFA-USA) to an interest-bearing escrow account, on or before the end of the twelfth month after the Agreement is executed. The Settlement Administrator will hold those amounts until such time as the Settlement Administrator is authorized to use or pay those funds, including for any authorized up-front Notice and Administrative Costs, pursuant to the Settlement Agreement, the Preliminary Approval Order, the Final Approval Order, or the Judgment.

4.2.3. The Parties recognize that the funds payable under Section 4.2.2 were donated to GFA-USA for use in the field. The Parties have agreed that local funds could be and have been or will be used by GFA-USA's field partners to ensure the satisfaction of all designations related to the funds identified in Section 4.2.2. GFA-USA's field partners will provide documentation that all such designations were satisfied, and Class Counsel will provide written confirmation of the adequacy of such documentation on or before the date the Preliminary Approval Order is entered.

4.2.4. To the extent the funds to be raised under Section 4.2.2(b) are raised through donations, they shall be raised through solicitations for general ministry purposes. To secure the obligation of GFA-USA to fund the additional $11,000,000 to the Settlement Administrator, GFA-USA shall grant a deed of trust lien for the benefit of the Settlement Administrator against the GFA-USA campus, such deed of trust to be in the form attached hereto as Exhibit G (the "Deed of Trust"). At such time as the $11,000,000 is transferred to the Settlement Administrator pursuant to Section 4.2.2(c), the Deed of Trust shall be released. If all

or any portion of the $11,000,000 is not transferred by the deadline stated in Section 4.2.2(c), the Deed of Trust will remain in place with respect to any unraised amount.

4.2.5.  The Court shall retain continuing jurisdiction over the Settlement Fund sufficient to satisfy the requirements of 26 C.F.R. § 1.468B-1.  The Settlement Administrator shall at all times seek to have the Settlement Fund treated as a "qualified settlement fund" as that term is defined in 26 C.F.R. § 1.468B-1.  The Settlement Administrator shall cause any taxes imposed on the earnings of the Settlement Fund, if any, to be paid out of such earnings and shall comply with all tax reporting and withholding requirements imposed on the Settlement Fund under applicable tax laws.  The Settlement Administrator shall be the "administrator" of the Settlement Fund pursuant to 26 C.F.R. § 1.468B-2(k)(3).

4.2.6.  Each Claimant, upon certification by the Settlement Administrator that he is or was a donor to GFA-USA during the Class Period, shall be entitled to receive Settlement Relief.  The amount of Settlement Relief shall be equal to the Settlement Class Recovery divided by the total amount of Approved Claims after accounting for Attorney's Fees and Expenses and Notice and Administration Costs.  No interest shall be included as an element of, or be payable or paid on, any claimed amount.

4.2.7.  All payments issued to Claimants via check will state on the face of the check that the check will expire and become null and void unless cashed within one hundred and eighty (180) Days after the date of issuance.

4.2.8.  No amount of the Settlement Fund shall revert to Defendants.  If, after payments to Claimants have been made and the deadline for cashing Claimants' checks has passed, funds remain in the Settlement Fund sufficient to make it feasible to make a second payment to Claimants (e.g., payment of $1.00 or more, after administrative expenses for issuing and mailing that check), a second distribution shall be made.  Such second distribution shall be made until

administratively infeasible.  Any unclaimed funds after the second distribution will be disbursed to an appropriate Christian charitable organization.  Defendants agree not to object to the suggestion that the Court distribute unclaimed funds evenly to: (i)Samaritan's Purse; (ii) Friends of Israel; (iii) Global Training Network; (iv) Heaven's Family; and (v) Christ for All Peoples, all of which must be certified by the ECFA as of the date of each distribution.

4.2.9.  If for any reason the Final Approval Order and/or the Judgment does not become Final within the meaning of Section 2.18, all money in the Settlement Fund, including the interest accumulated, shall be returned to GFA-USA within five (5) Days after the occurrence of the condition or event that prevents the Final Approval Order and/or the Judgment from becoming Final.

4.3.    <u>Settlement Non-Monetary Consideration</u>:

4.3.1.   Upon the entry of the Final Approval Order, Gisela Punnose will resign her position on GFA-USA's board and shall be replaced by an individual mutually acceptable to GFA-USA and Dr. Murphy.  Should said board position vacate during the three years commencing from the date of the entry of the Final Approval Order, any and all replacements to said board position shall be again subject to the mutual approval of GFA-USA and Dr. Murphy.  In the event Dr. Murphy is unable to approve the appointment, Phyllis Murphy may approve under these same rules.  Upon the expiration of the three (3) year term, this board position may be filled by any individual chosen by GFA-USA in its sole discretion.

4.3.2.   No new board members may be related to K.P. Yohannan by blood or marriage for a period of three (3) years commencing upon the entry of the Final Approval Order, except that if K.P. Yohannan or Daniel Punnose vacate their board positions during this period, their replacements shall not be restricted by this Section 4.3.2.

4.3.3.   GFA-USA will add a ninth position to its board, which shall be filled by Garland D. Murphy, III, MD, and/or his designee(s), either of whom will sit on the board for a three (3) year term commencing from the date of the entry of the Final Approval Order.  If a designee of Dr. Murphy, such designee must be approved by the other board members, such approval not to be unreasonably withheld.  As soon as is practicable after appointment to the board, Dr. Murphy and/or his designee shall comply with normal board practice by visiting the field at the cost of GFA-USA.  If Dr. Murphy or his designee's position becomes vacant during the three-year term, Dr. Murphy may designate a replacement for the vacant board seat.  In the event Dr. Murphy is unable to designate, Phyllis Murphy may designate a replacement under these same rules.  Upon the expiration of the three (3) year term, the board position described in Section 4.3.3 may be filled by any individual chosen by GFA-USA in its sole discretion.

4.3.4.   GFA-USA will require all members of its board, including any members added pursuant to this Agreement to undergo training related to the obligations and duties for individuals serving on a non-profit board.

4.3.5.   GFA-USA will publish annual reports of all work accomplished with donated funds.

4.3.6.   GFA-USA will ensure that solicitations to donors disclose that moneys are raised for ministry purposes, regardless of any particular designation, and that GFA-USA retains discretion to use donated funds in any manner that serves ministry purposes.

4.3.7.   The Individual Defendants shall provide verified financial information related to their financial status, in the form attached as <u>Exhibit H</u> upon the entry of the Preliminary Approval Order, and Class Counsel will provide written confirmation of the adequacy of such verified financials on or before the date the Final Approval Order is entered.

4.3.8.   GFA-USA may seek re-admission to the ECFA and will attempt to comply with all ECFA guidelines that are consistent with its mission of providing resources to work in foreign countries.  The Class and Class Counsel will not oppose any such readmission.

4.3.9.   Upon the entry of the Final Approval Order, GFA-USA will create a board sub-committee that will exist for three (3) years or until GFA-USA is recertified by the ECFA and consist of five (5) board members, which shall include Dr. Murphy or his designee(s) and which shall not include K.P. Yohannan or Daniel Punnose, to monitor GFA-USA's compliance with this Agreement.  The sub-committee while in existence shall produce a confidential annual report which shall be delivered to the board, the Honorable Erin Wiedemann, and Lead Counsel.

## 5.    RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS

5.1.    The Parties agree to jointly propose Heffler Claims Group as the Settlement Administrator, to process claims, field calls and correspondence from Settlement Class Members, and disburse amounts from the Settlement Fund.

5.2.    All Notice and Administrative Costs will be paid from the Settlement Fund, and Defendants' only responsibility regarding such costs is to fund the Settlement Fund.

5.3.    The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner.  Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, Email Notice, Website Notice, the Settlement Website (all as described in Section 6), administration of Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Agreement.

5.4.    Defendants will coordinate with the Settlement Administrator to provide Mail Notice and Email Notice to the Settlement Class, as provided in this Settlement Agreement, with Class Counsel's and Defendants' Counsel's participation and oversight.  Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist

of confidential information, non-public personal information, and other information protected by privacy laws, any such information shall be deemed "Confidential-Attorneys' Eyes Only" under ¶ 6 of the protective order entered in the Murphy Litigation [ECF 25], and shall be used only for the purpose of administering this Settlement.

5.5.    <u>W9 Forms</u>:  The Settlement Administrator shall complete and provide to GFA-USA any W9 forms necessary for GFA-USA to implement this Settlement.

## 6.    NOTICE TO THE CLASS

6.1.    <u>Mail Notice</u>:    Subject to the requirements of the Preliminary Approval Order, Notice to those members of the Settlement Class for whom the electronic records of GFA-USA reflect a last known mailing address, shall be by means of separate first-class mailings to those names and addresses.

6.1.1.   The Mail Notices shall all be mailed within twenty-one (21) Days after the Court's Preliminary Approval Order.

6.1.2.   The Mail Notice of Class Action, Proposed Settlement, Final Approval Hearing, Right to Appear, Instructions and Class Action Claim Form shall detail how those Settlement Class members so desiring may opt out or object to the settlement, and how members of the Class may make a claim for settlement relief as described in Section 7.1 below.

6.1.3.   The Mail Notice shall include Instructions and a detachable postage-paid Claim Form in a form substantially similar to Exhibit A to this Agreement or as ultimately approved by the Court (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations).  The Claim Form (printed and online) will detail the aggregate amount of contributions made by the Class Member during the Settlement Class Period.  The Settlement

Administrator shall run the mailing list through the National Change of Address database ("NCOA'') before mailing.

6.1.4.   The Parties shall also prepare a Spanish-language translation of the Mail Notice, Claim Instructions, and Claim Form, to be made available at the Settlement Website.

6.1.5.   After posting of the Mail Notice by the Settlement Administrator with the United States Postal Service, for any Mail Notices returned as undeliverable, the Settlement Administrator may run reverse-lookups to obtain better addresses for such returned Notices, and should such efforts indicate a possible alternate address, the Settlement Administrator may post the returned Mail Notice to the alternative address; provided, however, that if a determination is made in good faith by the Settlement Administrator that it is not possible to further update any particular Settlement Class Member's address(es) in sufficient time to repost the Class Notice(s) at least twenty (20) Days before the scheduled Final Approval Hearing, then the Settlement Administrator need make no further efforts to provide further Mail Notice to such person(s).

6.1.6.   All costs of Mail Notice will be paid from the Settlement Fund, and Defendants' only responsibility regarding such costs is to fund the Settlement Fund.

6.2.   Email Notice: Defendants will provide the Settlement Administrator with email addresses for Class Members to the extent those email addresses are known and readily available in Defendants' records.

6.2.1.   The Settlement Administrator will send an Email Notice of the Settlement to the email addresses provided by Defendants no later than the posting of the Mail Notice, in a form substantially similar to Exhibit B to this Agreement or as ultimately approved by the Court. The text of the Email Notice will also contain a link to the Settlement Website described in Section 6.3, at which copies of the Stipulation of Settlement and Exhibits, the Mail Notice, Instructions and the Class Action Claim Form may be downloaded, and where Claims may be submitted.

6.2.2.  All costs of Email Notice will be paid from the Settlement Fund, and Defendants' only responsibility regarding such costs is to fund the Settlement Fund.

6.3.  <u>Settlement Website</u>:  No later than the posting of the Mail Notice, the Settlement Administrator shall establish a Settlement Website which shall contain the Website Notice, in a form substantially similar to Exhibit C, copies of the Settlement Agreement and Exhibits, and the Mail Notice.  The Settlement Website shall also contain Instructions and a Class Action Claim Form which may be downloaded or printed from the Internet site.  The Settlement Website shall have a Uniform Resource Locator which identifies the Settlement Website as www.gfaclassaction.us.

6.3.1.  The Settlement Website shall remain open and accessible for not less than thirty (30) Days after the last day to cash any check drawn on the Settlement Fund.  Settlement Class Members shall also have the option of completing their Claim Form online within the Settlement Website, utilizing an e-signature format.

6.3.2.  All costs associated with the Settlement Website will be paid from the Settlement Fund, and Defendants' only responsibility regarding such costs is to fund the Settlement Fund.

6.4.  <u>Toll-Free Settlement Hotline</u>:  The Settlement Administrator will establish and maintain an automated toll-free telephone line (which shall not have live operators) for persons in the Settlement Class to call with, and/or to leave questions or messages regarding, Settlement-related inquiries, to answer the questions of persons who call with or otherwise communicate such inquiries to Class Counsel (except that the Settlement Administrator shall not give, and shall not be expected to give, legal advice).  All costs associated with this telephone line and arising from its operation will be paid from the Settlement Fund, and Defendants' only responsibility regarding such costs is to fund the Settlement Fund.

7.      **CLAIM FILING, REVIEW, AND APPROVAL PROCESS**

7.1.    <u>Claim Filing Process</u>:  Settlement Class Members shall be permitted to make a Claim for Settlement Relief in one of two ways:

(a)      By mailing (either through posting with the United States Postal Service or through a private mail carrier, such as UPS or Federal Express, provided that proof of the mail date is reflected on the label of the mailing) a written Claim Form providing the required information, to the Settlement Administrator, on a date no later than the Claim Deadline.  A written Claim Form will also be available on the Settlement Website for Settlement Class Members to download or print out and mail to the Settlement Administrator pursuant to this Section; or

(b)      By completing an online Claim Form within the Settlement Website utilizing an e-signature format.

7.2.    Any Settlement Class Member who does not properly submit a completed Claim Form on or before the Claim Deadline shall be deemed to have waived any claim to Settlement Relief and any such Claim Settlement Form will be rejected, but the claims of any such Settlement Class Member will still be released under this Agreement.

7.3.    <u>Claim Review Process</u>:  As soon as practicable, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form was submitted in a timely fashion, and that the person submitting the Claim is a member of the Settlement Class.

7.4.    <u>Notification</u>:  Within ten (10) Days after the Claims Deadline, the Settlement Administrator shall provide Class Counsel and Defendants' Counsel with a list of all Settlement Class Members who filed a Claim, whether the Claim was rejected or accepted, and if rejected, the reason it was rejected.  The Parties will use their best efforts to amicably resolve any dispute about the processing of any Claim.

7.5.    The Settlement Administrator shall have sixty (60) Days after the Final Settlement Date within which to process the Claims and remit the appropriate Settlement Relief amounts by check to Claimants from the Settlement Fund.

7.6.    <u>Information Available to Class Counsel and Defendants' Counsel</u>:  Class Counsel and Defendants' Counsel shall have the right to communicate directly with the Settlement Administrator regarding the administration of this Settlement, provided that each notifies the other contemporaneously of all such interactions.

**8.    COVENANTS**

The Settling Parties covenant and agree as follows:

8.1.    <u>Covenant Not to Sue</u>:  Plaintiffs and the Settlement Class Members covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims against any of the Released Persons; and (b) that the foregoing covenant and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Persons.

8.2.    <u>Cooperation</u>:  The Settling Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of the Final Approval Order and the Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all class notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court.

**9.    REPRESENTATIONS AND WARRANTIES**

9.1.    <u>Plaintiffs' Representations and Warranties</u>:

9.1.1.    Plaintiffs represent and warrant that they are the sole and exclusive owners of all of their own Released Claims and that they have not assigned or otherwise transferred any interest in any of their Released Claims against any of the Released Persons, and further covenant that they will not assign or otherwise transfer any interest in any of their Released Claims.

9.1.2.    Plaintiffs represent and warrant that they have no surviving claim or cause of action against any of the Released Persons with respect to any of the Released Claims.

9.2.    <u>The Settling Parties' Representations and Warranties</u>:

9.2.1.    The Settling Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, and that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever and have not relied upon in executing the Settlement Agreement, any representations, statements, or omissions pertaining to any of the foregoing matters, whether by any Party, any non-Party, or any other person, including any person representing any Party to the Settlement Agreement.  Each of the Settling Parties assumes the risk of mistake as to facts or law.

9.2.2.    The Parties also mutually stipulate that all donations designated for use in the field were ultimately sent to the field.

## 10.    RELEASES

10.1.    <u>Released Claims of Settlement Class</u>:  Upon Final Approval, each member of the Settlement Class shall, by operation of the Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion

or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, as of the date of Final Approval, that relate to or arise out of any statements, representations or activities relating to solicitation of donations or other support, use of donations, transportation or transfer of funds, dealings with any GFA entity (such as GFA-Canada) or any of the field partners, use of locally raised funds in the field to satisfy donor preferences or designations, or any claims related in any way to the funds donated to GFA-USA by Settlement Class Members during the Settlement Class Period, including but not limited to claims that relate to or arise out of Defendants' use of any donated funds and any claims that were or could have been asserted in the Murphy Litigation or Dickson Litigation related to Defendants' use of any donated funds.  For the avoidance of doubt, this release includes any claims or potential claims against any person or entity identified as a possible alter ego of GFA-USA in the Murphy Litigation [ECF 38].

10.2.    Without in any way limiting their scope, the Released Claims cover by example and without limitation, any and all claims for attorneys' fees, costs, expenses, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, Plaintiffs, or any Settlement Class Members in connection with or related in any manner to this Settlement, the administration of this Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

10.3.    In connection with the Releases in Section 10.1, and without expanding their scope in any way, Plaintiffs and each Settlement Class Member shall be deemed, as of the date of Final Approval, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

To the extent that anyone might argue that these principles of law are applicable -- notwithstanding that the Settling Parties have chosen Texas law to govern this Settlement Agreement -- Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree, that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released.  The Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that even if they may later discover facts in addition to or different from those which they now know or believe to be true, they fully, finally, and forever settle and release any and all claims covered by these Releases upon entry of the Judgment.  The Settling Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

10.4.    This Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.5.    The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court.  The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement.  The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

10.6.    Upon entry of the Final Approval Order and the Judgment: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those

who have properly requested exclusion (opted out) in accordance with the terms and provisions hereof; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s) except as set forth in this Agreement; and (iii) Settlement Class Members who have not opted out shall be permanently barred from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction based on any of the Released Claims.

10.7.    Nothing in this Settlement Agreement shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth herein are not intended to include the release of any rights or duties of the Settling Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

## 11.    OPT-OUT RIGHTS

11.1.    A potential Settlement Class Member who wishes to opt out of the Settlement Class must complete and send to the Settlement Administrator a Request for Exclusion that is postmarked no later than the Opt Out Deadline.  The Request for Exclusion must: (a) identify the name and address of the potential Settlement Class Member requesting exclusion; (b) be personally signed by the potential Settlement Class Member requesting exclusion; and (c) contain a statement that reasonably indicates a desire to be excluded from the Settlement.  Mass or class opt-outs shall not be allowed.

11.2.    Any potential member of the Settlement Class who properly opts out of the Settlement Class shall: (a) not be bound by any orders or judgments relating to the Settlement; (b) not be entitled to relief under, or be affected by, the Agreement; (c) not gain any rights by virtue of the Agreement; and (d) not be entitled to object to any aspect of the Settlement.

11.3.    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests for Exclusion within seven (7) Days after the Opt Out Deadline. Defendants' Counsel shall be entitled to contact any potential member of the Settlement Class who files a timely Request for Exclusion to determine the reasons for the Request for Exclusion.

11.4.    If more than 15,000 potential members of the Settlement Class timely opt out of the Settlement, then the Settlement may be deemed null and void upon notice by Defendants without penalty or sanction.

11.5.    Except for those potential members of the Settlement Class who timely and properly file a Request for Exclusion in accordance with Section 11, all other potential members of the Settlement Class will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon Final Approval, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.    OBJECTIONS

12.1.    <u>Overview</u>:  Any potential Settlement Class Member who does not opt out of the Settlement will be a Settlement Class Member and may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement and all requirements of Fed.R.Civ.P. 23.

12.2.    <u>Process</u>:  Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.  The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defense Counsel (at the addresses identified in Section 19), no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include:

(a) the name, address, and telephone number of the Settlement Class Member objecting; (b) if represented by counsel, the name, address, and telephone number of the Settlement Class Member's counsel; (c) the basis for the objection; and (d) a statement of whether the Settlement Class Member objecting intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.3.    Appearance:  Subject to approval of the Court, any Settlement Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include the Settlement Class Member's full name, address, and telephone number, as well as copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing or raise any objections.

## 13.    SETTLEMENT APPROVAL

13.1.    Plaintiffs shall, no later than February 28, 2019, or as otherwise set by the Court, apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2.    Not later than seven (7) Days before the Final Approval Motion Deadline, the Settlement Administrator will provide Class Counsel with a declaration that the Class Notice has been disseminated in accordance with the Preliminary Approval Order and identifying the number of Requests for Exclusion to the Settlement, along with the number of claims received to date.

## 14.    CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

14.1.    Plaintiffs shall move for Final Approval of the Settlement and entry of the Final Approval Order and Judgment, and shall request that the preliminary certification of the nationwide Settlement Class for settlement purposes be made final.

14.2.    If the Settlement is not granted Final Approval, or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied; in such circumstances, Defendants reserve and shall have all rights to challenge certification of any settlement class or any other class for trial purposes in the Murphy Litigation, or in any other action, on all available grounds as if no nationwide Settlement Class had been certified.

14.3.    Defendants' agreement to Plaintiffs seeking certification of the Settlement Class does not waive any right to compel binding arbitration against former employees who are not ultimately in the Settlement Class by virtue of timely Requests for Exclusion.

## 15.    ATTORNEYS' FEES AND EXPENSES

15.1.    Class Counsel may apply to the Court for an award of Attorneys' Fees and Expenses from the Settlement Fund, with any request for Attorneys' Fees not to exceed one-third of the Settlement Fund and any request for Expenses not to exceed $750,000.  Defendants and Defendants' Counsel agree not to object to either request.

15.2.    The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Expenses are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Expenses, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Approval Order or Judgment approving the Agreement and the Settlement, except as provided for in Section 15.1.

15.3.    The Attorneys' Fees and Expenses, as awarded by the Court, shall be paid to Plaintiffs' Lead Counsel from the Settlement Fund. Plaintiffs' Lead Counsel may thereafter allocate the Attorneys' Fees and Expenses among other Class Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

15.3.1. In their application for an award of Attorney's Fees and Expenses, Class Counsel may petition the Court for payment of the Attorney's Fees and Expenses immediately after the Court executes an order awarding such Attorneys' Fees and Expenses (i.e. at the Final Approval Hearing).

15.3.2. In the event the Court grants the petition provided for in Section 15.3.1, and if, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees and Expenses is overturned or lowered, or if the Settlement is terminated or is not approved by the Court, or if there is an appeal and any order approving the Settlement does not become final and binding upon the Class, then, within five (5) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, each Class Counsel receiving any portion of the award of Attorneys' Fees and Expenses shall refund to the Settlement Fund such portion previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  Each such Class Counsel's law firm receiving Attorneys' Fees and Expenses, as a condition of receiving same, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

## 16.    NON-DISPARAGEMENT AND PUBLIC COMMENTS

16.1.    Plaintiffs as well as their experts agree not to directly or indirectly disclose, communicate, or publish any disparaging, negative, harmful, or disapproving information, whether conveyed by written communication, oral communication, electronic or magnetic communication, writing, oral or written statement, comment, opinion, remark or otherwise, concerning or related to the Plaintiffs' allegations in the Murphy Litigation or Dickson Litigation or any other matter made the subject of this Settlement Agreement or the Release herein.

16.2.    Any public statements made by Class Counsel or Defense Counsel related to the Murphy Litigation, the Dickson Litigation, or this Agreement must be agreed to in advance by the other Party prior to publication, except that Class Counsel may list the case name and number and settlement amount on their websites, list(s) of completed cases, etc.

## 17.    TERMINATION AND EFFECT THEREOF

17.1.    This Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied, and terminable by Defendants at their election if the conditions of Section 11.4 occur, unless the relevant conditions are waived in writing signed by authorized representatives of each of the Plaintiffs and Defendants.

17.2.    This Agreement shall also terminate at the discretion of any named Plaintiff or Defendants if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the Final Approval Order or Judgment, or any of the Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

17.3.    If this Agreement is terminated as provided herein, either automatically or by a Party, the Settlement shall be null and void from its inception and the Settling Parties will be restored to their respective positions in the Murphy Litigation as of the day prior to the date of the Preliminary Approval Order.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in the Murphy Litigation, or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, nunc pro tunc.

## 18.    MISCELLANEOUS PROVISIONS

18.1.    The Settling Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and

implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

18.2.    The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Murphy Litigation.  The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that the consideration provided to the Settlement Class and the other terms of the Settlement were negotiated in good faith and at arm's length by the Settling Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.

18.3.    Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of Defendants, or of Released Parties; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault, omission, wrongdoing, or liability of Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Defendants may file this Agreement (including the Exhibits thereto), the Final Approval Order, and/or the Judgment in any action that may be brought against any of them in order to support any defense or counterclaim, including, without limitation, those based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

18.4.    All agreements made and orders entered during the course of the Murphy Litigation relating to the confidentiality of information will survive this Agreement.

18.5.    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

18.6.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Plaintiffs and Defendants or their respective successors-in-interest.  Any material changes must be approved by the Court.

18.7.    This Agreement and the Exhibits attached hereto constitute the entire agreement among the Settling Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein.  Except as otherwise provided herein, the Settling Parties will bear their own respective costs.

18.8.    This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  A complete set of counterparts will be submitted to the Court.

18.9.    This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

18.10.  The Court, acting through the Honorable Erin Wiedemann, will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

18.11.  None of the Settling Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof.  The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Settling Party as the drafter thereof.

18.12.  The Settlement shall be governed by the laws of the State of Texas, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

18.13.  The following principles of interpretation apply to the Agreement: (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successors-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

18.14.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Final Approval Order and Judgment are entered.

## 19.    NOTICES

19.1.    All notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by email and mail to the following addresses:

19.2.    All notices to Class Counsel shall be sent to Class Counsel, c/o:

> Marc R. Stanley
> Stanley Law Group
> 6116 N. Central Expressway, Suite 1500
> Dallas, Texas 75206
> marcstanley@mac.com
>
> Counsel for Plaintiffs and Class

19.3.   All notices to Defense Counsel shall be sent to Defense Counsel, c/o:

Harriet E. Miers
Robert T. Mowrey
Paul F. Schuster
Matthew H. Davis
Locke Lord LLP
2200 Ross Ave., Suite 2800
Dallas, Texas 75201
hmiers@lockelord.com
rmowrey@lockelord.com
pschuster@lockelord.com
mdavis@lockelord.com

Counsel for Defendants

19.4.   The notice recipients and addresses designated above may be changed by written agreement of Plaintiffs and Defendants.

19.5.   Upon request, the Parties agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Settling Parties have executed and caused this Settlement on the dates set forth below.


**On Behalf of Defendant Gospel for Asia, Inc.:**

Dated: _Feb 25, 2019_

By: _____

Name: _K.P. Yohannan_

Title: _President_

Page 38

**Individual Defendants:**

Dated: 2 - 21 - 2019

_____
K.P. Johannan

Dated: 2 - 21 - 2019

_____
Gisela Punnose

Dated: 2/21/19

_____
Daniel Punnose

Dated: _____

_____
David Carroll

Dated: 21-FEB, 2019

_____
Pat Emerick

**Individual Defendants:**

Dated: _____

_____
K.P. Yohannan

Dated: _____

_____
Gisela Punnose

Dated: _____

_____
Daniel Punnose

Dated: _2/21/2019_____

_____
David Carroll

Dated: _____

_____
Pat Emerick

**On Behalf of Plaintiffs and the Settlement Class:**

Dated: _February 19, 2019_    By: _____

Garland D. Murphy, III, MD

Dated: _February 19, 2019_ ·    By: _____

Phyllis Murphy

**Approved as to form and content:**

For Plaintiffs:

Woodson W. Bassett III
James Graves
Bassett Law Firm LLP
221 North College Avenue
P.O. Box 3618
Fayetteville, Arkansas 72702
479.521.9996
479.521.9600 (fax)

Marc R. Stanley
Martin Woodward
Stanley Law Group
6116 N. Central Expressway
Suite 1500
Dallas, Texas 75206
214.443.4300
214.443.0358 (fax)

Tom Mills
Mills and Williams, LLP
5910 N. Central Expressway, Suite 980
Dallas, Texas 75206
214.265.9265
214.361.3167 (fax)

For Defendants:

Harriet E. Miers
Robert T. Mowrey
Paul F. Schuster
Matthew H. Davis
LOCKE LORD LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000

Steven Shults
John T. Adams
SHULTS & ADAMS LLP
200 West Capitol Avenue, Suite 1600
Little Rock, Arkansas 72201
T: (501) 375-2301