United States District Court
Western District of Arkansas
Fayetteville Division

| | | |
|---|---|---|
| Garland D. Murphy, III, M.D., and Phyllis Murphy, individually and on behalf of all others similarly situated, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case no. **5:17-CV-5035 ELW** |
| Gospel for Asia, Inc., Gospel for Asia-International, K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick, | § § § § § § | |
| Defendants. | § | |

## Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Garland D. Murphy, III, MD and Phyllis Murphy ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement.

Plaintiffs, with agreement from Defendants Gospel for Asia, Inc., K.P. Yohannan, Gisela Punnose, Daniel Punnose, David Carroll, and Pat Emerick (collectively, "Defendants"), respectfully request the Court to enter the proposed Final Order and Judgment previously submitted to the Court, which finally approves the Settlement Agreement and Release ("Agreement") [Doc. 207].[1]

---

[1] All defined terms herein have the same meaning as set forth in the Settlement Agreement and Release [Doc. 207].

## 1. Introduction

By all measures, the Agreement deserves final approval. It was reached only after years of hard-fought litigation, and it represents a large and very significant resolution of this RICO class action. As a testament to the excellent result achieved in this case, only one-tenth of one percent (.001) of the 189,000+ Class Members have requested exclusion, while only a handful of objections have been filed. And the claims rate is strong—more than 25,000 Class Members have filed claims thus far[2]—a claims participation rate well in excess of most, as noted by the Eighth Circuit.

## 2. The litigation and the Settlement

Plaintiffs and the Class are donors to Defendant Gospel for Asia, Inc. ("GFA"). Plaintiffs sued Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*., and for common law fraud, unjust enrichment, and violations of the Arkansas Deceptive Trade Practices Act, alleging that Defendants failed to fulfill their donor-designated charitable contributions. The extensive procedural history of the case, resulting in no less than six written orders and a published opinion on class certification, is well known to the Court and is summarized in detail in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement [Doc. 209] at 3-5.

After several years of vigorously contested litigation, and after hard-fought, arm's length negotiation by the parties and experienced counsel (*see id*. at 5-6), Plaintiffs and

---

[2] As of June 4, 2019. *See* Declaration of Joseph F. Mahan ("Mahan Dec.") filed herewith at ¶ 11. The deadline for filing claims is July 11, 2019, and Plaintiffs expect the claims rate to increase significantly in the coming weeks.

Defendants reached a settlement resolving the claims of Plaintiffs and the members of the Class.

This settlement achieves an excellent result: it secures a number of significant changes to Defendants' operations and business practices that will enhance transparency and accountability to future donors. Defendants will also pay $37,000,000.00 (including attorneys' fees and Class administration expenses) to the Class. In exchange, Plaintiffs and the Class release Defendants from any claims related to Defendants' use of donated funds that were or could have been asserted in the litigation. *See id*. at 6-7; *see generally* Agreement [Doc. 207] at §§ 4.2, 4.3, 10.

### 3. The Court should grant final approval

FED. R. CIV. P. 23(e) requires judicial review to determine that any "[s]ettlement, [v]oluntary [d]ismissal, or [c]ompromise" of the claims, issues, or defenses of a certified class is "fair, reasonable, and adequate." In reviewing proposed class settlements, courts begin with the guiding principle that "a class action settlement is a private contract negotiated between the parties" and is "presumptively valid." *In re Wireless Tel. Fed. Cost Recovery Fees Litig*., 396 F.3d 922, 934 (8th Cir. 2005); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig*., 716 F.3d 1057, 1063 (8th Cir. 2013); *see also Little Rock School District v. Pulaski County Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors agreements, and courts should approach them with a presumption in their favor.").

The Court's role in reviewing a negotiated class settlement is simply to "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless*, 396 F.3d at 934.

### 3.1. The standard for granting final approval

The Eighth Circuit requires a district court to consider four factors in determining whether a settlement is fair, adequate, and reasonable: (1) the merits of the plaintiff's case, weighted against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Uponor,* 716 F.3d at 1063 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). These are called the "*Van Horn* factors." *See Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017).

Recent amendments to Rule 23 went into effect on December 1, 2018. Now, in determining final approval under Rule 23, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). These new amendments to Rule 23(e) partially overlap with the *Van Horn* factors, and the Court will want to look at both sets of factors in deciding whether to finally approve the Agreement.

4

### 3.2. The Class has been represented adequately

The Court must first determine whether the Class representatives and Class Counsel have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A). In certifying the Settlement Class, the Court found that the adequacy requirement of Rule 23(a)(4) had been met because Plaintiffs and their Counsel would adequately represent the Class. *Murphy*, 327 F.R.D. at 237-38. Since the time the Court made this finding, Plaintiffs and Class Counsel continued their tenacious efforts in litigation and lengthy negotiations, culminating in the proposed Settlement.

Moreover, since the time the Court granted preliminarily approval, Class Counsel has been diligent in following up to ensure that all terms of the Settlement are effectuated. As an example, Class Counsel received the verified financial information of the Individual Defendants referenced in § 4.3.7 of the Agreement [Doc. 207]; these are filed as Exhibits 1-5 to the accompanying Declaration of Marc R. Stanley, along with the financial documentation required by § 4.2.3 (filed as Exhibit 6 to the Stanley Dec.). The Court should therefore find that this factor is present.

### 3.3. The proposed Settlement was negotiated at arm's length

Next, the Court must determine whether the proposed Settlement was negotiated at arm's length. FED. R. CIV. P. 23(e)(2)(B). Here, the Settlement was reached after vigorous, arm's length, and hard-fought negotiations between the parties and highly experienced counsel. Plaintiffs were represented by counsel with extensive experience litigating complex class actions and thorough familiarity with the factual and legal issues of the case, and Defendants were represented by similarly knowledgeable counsel experienced in litigating class actions.

In preparation for such negotiations, Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation. Class Counsel conducted a comprehensive examination of the facts, reviewed hundreds of thousands documents produced by Defendants and third parties, completed and defended almost twenty depositions, consulted with experts, briefed and argued in opposition to several motions, and defended an appeal of the class certification decision—all of which assisted in identifying the material issues in this case and the strengths and weaknesses of the claims asserted.

The arm's-length nature of the negotiations and the participation of experienced counsel throughout the process strongly supports the conclusion that the proposed settlement is fair, reasonable, and adequate. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness; indeed, with the assistance of the Magistrate Judge, counsel for both parties continued to vigorously negotiate some terms of the Settlement's implementation right up to the time of preliminary approval.

### 3.4. The relief provided for the Class is adequate

The third factor is whether the Settlement provides adequate relief to the Class, taking into account the factors listed in Fed. R. Civ. P. 23(e)(2)(C). These overlap with two *Van Horn* factors: (1) the merits of the plaintiff's case weighted against the terms of the settlement and (2) the complexity and expense of further litigation. Thus, the *Van Horn* line of cases on these factors are pertinent. Importantly, the Eighth Circuit stated: "The single most important factor in determining whether a settlement is fair,

reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Van Horn*, 840 F.2d at 607.

As discussed in Plaintiffs' Memorandum in Support of Preliminary Approval [Doc. 209] at 11-13, the terms of the proposed settlement were only agreed to with the assistance of a Magistrate Judge after lengthy arm's length negotiations, and they provide substantial benefits to Class members. Moreover, although Plaintiffs reasonably have confidence in the strength of their case, there would have been a number of defense contentions they would have had to overcome if they had taken the case to trial—including those raised in the multiple motions that have not been ruled on. Thus, this factor "weighs in favor of approving the settlement because 'the outcome of the litigation would be far from certain' if the case had not settled ... whereas 'the settlement provides substantial benefits to the class ....'" *Keil*, 862 F.3d at 695 (citations omitted).

Here, continuing the litigation would entail a lengthy and expensive legal battle with an uncertain outcome. Defendants already appealed the Eighth Circuit's denial of their Rule 23(f) petition to the Supreme Court; had this case proceeded to trial, the losing side would be all but certain to appeal from an adverse judgment, which would potentially require years to resolve. And, notwithstanding the confidence of Class Counsel in the merits of the Class claims, Class Counsel are cognizant that no case is a sure winner at trial, and that Defendants had arguments and potential defenses available to them. Moreover, were this case to proceed to a verdict in favor of Plaintiffs, the financial statements submitted by the Individual Defendants and filed with the Court show a complete inability to satisfy even a small judgment. *See* Stanley Dec. Exh. 1-5. And even if Plaintiffs succeeded in having all the entities in their motion declared

alter egos of the Defendants and subject to a large judgment,[3] there is no current treaty between the United States and India to enforce any foreign judgment.

Against this background, the Settlement represents an excellent result for the members of the Class. Defendants' $37 million payment provides for significant compensation to the Class that will be available much earlier than if litigation against Defendants continued through trial and appeal. In addition to a significant cash payment, the Settlement also provides important benefits to the Class by obtaining modification of Defendants' board structure to ensure greater accountability to donors, as well as policies that enhance transparency.

Moreover, as discussed in Class Counsel's Motion for Award of Fees and Expenses [Doc. 227], the 33% of the common fund requested by Class Counsel is well within the range of reasonableness routinely approved by the Eighth Circuit, and, pursuant to § 15.3.1 of the Agreement [Doc. 207], there is no reason it should be delayed or withheld.

Therefore, in light of the risks and duration of the litigation and the monetary and nonmonetary benefits achieved by the Settlement, the Settlement is well within the range of being fair, reasonable, and adequate, and it should be approved.

---

[3] After Plaintiffs learned of at least 76 entities connected with Defendants that were possibly alter egos, Plaintiffs moved to stage alter ego issues after the verdict in place of naming all of these entities as parties to the case. *See generally* Motion to Stage Alter Ego Issues Ater Verdict [Doc. 38]. Defendants filed a statement of non-opposition to this motion [Doc. 43], and the Court granted it on January 29, 2018 [Doc. 60].

### 3.5. The Defendants' financial condition

One *Van Horn* factor requires consideration of the Defendants' financial condition. As of this filing, Defendant GFA has deposited $25 million into the Settlement Fund, as contemplated by § 4.2.2 of the Agreement [Doc. 207]. This factor is, accordingly, neutral. *Keil*, 862 F.3d at 697-98 (finding the factor to be neutral when Defendant had deposited $32 million into settlement fund, and no evidence called its financial condition into question).

### 3.6. The amount of opposition to the Settlement is negligible

The final *Van Horn* factor requires the Court to consider the amount of opposition to the Settlement. Here, opposition is negligible, while support for the Settlement is demonstrably strong.

As of the date of this filing, 25,308 Class members have filed claims (and claims may continue to be filed through July 11, 2019)—a claims rate of 13.38%.[4] As the Eighth Circuit has discussed in overruling an objection to a claim rate of 3%:

> [W]e note that a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (citing evidence suggesting that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377-78, 1384 (S.D. Fla. 2007) (approving settlement where 118,663 out of approximately 10.3 million class members submitted claims, for a claim rate of approximately 1.2 percent). Moreover, even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.").

---

[4] *See* Mahan Dec. ¶ 11 ("As of June 4, 2019, Heffler has received 12,449 paper Claim Forms and 12,859 Claim Forms filed through the Settlement website").

*Keil*, 862 F.3d at 697 (citations and quotations in original).

In contrast to the thousands of claims for Settlement funds, only 24 objections have been filed [Doc. 216-25, 229-42]; Mahan Dec. ¶ & Ex. F thereto. The Eighth Circuit has weighed the *Van Horn* opposition factor in favor of settlement when as many as 4% of class members objected to a settlement. *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor."). Here, the 24 objectors constitute about one one-hundredth of one percent (.0001) of the Class.[5]

Perhaps more importantly, the objectors generally do not identify ostensible inadequacies or inequities in the proposed settlement or requested fee award. Two of the objections appear to be requests for exclusion, as they don't express any objection at all to the settlement. [Doc. 220, 221]. Two others don't say very much beyond "I object." [Doc. 218, 229]. Another four take issue with the requested fee award or common fund as being "too high," but don't elaborate much beyond expressing dissatisfaction. [Doc. 224, 225, 236, 237]. Two others object, respectively, to the American judicial system [Doc. 219] and the class action mechanism generally [Doc. 231]. The predominant concern expressed by the remaining objectors—evidently, staunch supporters of GFA— is that the ministry does good work and should therefore not settle [Docs. 216, 217, 222, 223, 230, 232, 233, 234, 235, 237, 239, 241, 242]; conversely, two objectors complain GFA is not giving up enough [Doc. 238, 240].

---

[5] Plaintiffs note that all state and territorial attorneys general received timely notice of the settlement pursuant to 28 U.S.C. § 1715(b) and none objected. *See* Mahan Dec. ¶ 4 & Ex. A thereto.

The Court should overrule all of these objections. Essentially, these are objections to the concept of this litigation (or to litigation in general), rather than particular, substantiated criticisms of any aspect of either the Settlement or the requested award of attorneys' fees and expenses. Instead, the Court should find that the final *Van Horn* factor weighs in favor of final approval, as shown by the impressive and robust claims rate and the miniscule amount of opposition to the Settlement.

### 3.7. Class Notice satisfied due process requirements

In its March 22, 2019 Order Preliminarily Approving Settlement and Approving Form and Manner of Notice [Doc. 214], the Court approved the notice plan proposed by Plaintiffs, finding that it met "the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the Constitution of the United States, and any other applicable law, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto." The Court appointed Heffler Claims Group ("Heffler") as Settlement Administrator to administer the notice process. Order [Doc. 214] at 4.

Heffler then sent over 189,000 postcard notices (and over 109,000 email notices) pursuant to the notice plan, and subsequently followed up to locate and re-send notices that were returned. Mahan Dec. ¶¶ 5, 9-10, 15-16. On or before April 12, 2019, Heffler updated an existing class website (www.gfaclassaction.us) to allow downloads of relevant court documents, notices, and claim forms. *Id.* ¶ 8. Heffler additionally set up a toll-free number (844-367-8894) for Class members to obtain additional information about the Settlement. *Id.* ¶ 6. Heffler also provided notice to all attorneys general as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). *Id.* ¶ 4.

Class Counsel and Heffler have complied precisely with the forms and procedures set forth in the Court's Order [Doc. 214], and in doing so have satisfied the requirements of Fed. R. Civ. P. 23 and any reasonableness standard imposed by due process. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152-53 (8th Cir. 1999); *see generally* Mahan Dec. As an indication of the effectiveness of the notice plan, as of June 4, 2019, nearly 25,308 Class members have thus far submitted claims for aggregate payments in excess of $107 million, ensuring that there will be pro rata distributions to Class members and that any unclaimed or residual funds to be donated to charity will be de minimis. *See* Mahan Dec. ¶¶ 11-14.

### 3.8. The Settlement Class should be certified

To finally approve the Agreement, the Court must also approve and certify the proposed Settlement Class. Crucially, the Court has already granted a contested motion for class certification and made specific findings that all class certification requirements are met. *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227 (W.D. Ark. 2018).

The Advisory Committee Notes to the 2018 Amendments state: "If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." The only difference in the Class the Court certified and the proposed Settlement Class is that the Settlement Class includes the contributions of former employees of GFA who were previously excluded. Crucially, this does not change the claims, defenses, or issues at all, and it does not require re-analysis of any of the Rule 23 factors the Court already found were met. The Court

should again find that all Rule 23 requirements are satisfied, and it should certify the Class and appoint Plaintiffs as its representatives and their counsel as Class Counsel.

### 4. Conclusion

After many years of hard-fought litigation, all parties have reached an accord that provides meaningful relief to the Class. The reaction has been overwhelmingly positive, and all relevant factors weigh in favor of approval. For all of the foregoing reasons, Plaintiffs, with the consent of Defendants, respectfully request that the Court find that the proposed Settlement is fair, adequate, and reasonable, and that it grant their Motion for Final Approval of Class Action Settlement and enter the proposed Final Order and Judgment previously submitted to the Court.

Dated:  June 5, 2019                    Respectfully submitted,

/s/ *Marc R. Stanley*
Marc R. Stanley (admitted *pro hac vice*)
marcstanley@mac.com
Martin Woodward (admitted *pro hac vice*)
mwoodward@stanleylawgroup.com
**STANLEY LAW GROUP**
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214.443.4300
214.443.0358 (fax)

Woodson W. Bassett III
Arkansas Bar No. 77006
wbassett@bassettlawfirm.com
James Graves
Arkansas Bar No. 95172
jgraves@bassettlawfirm.com
**BASSETT LAW FIRM LLP**
221 North College Avenue
P.O. Box 3618
Fayetteville, Arkansas 72702
479.521.9996
479.521.9600 (fax)

*Counsel for Plaintiffs and the Class*

Tom Mills (admitted *pro hac vice*)
tmills@millsandwilliams.com
**MILLS AND WILLIAMS, LLP**
5910 N. Central Expressway, Suite 980
DALLAS, TEXAS 75206
214.265.9265
214.361.3167 (FAX)

*Of Counsel for Plaintiffs and the Class*

### Certificate of Service

The undersigned hereby certifies that on June 5, 2019, I electronically filed the foregoing document via the Court's ECF system and notice of this filing was sent via ECF by e-mail to the following counsel of record:

| | |
|---|---|
| Harriet E. Miers, via email: | hmiers@lockelord.com |
| Robert T. Mowrey, via email: | rmowrey@lockelord.com |
| Paul F. Schuster, via email: | pschuster@lockelord.com |
| Cynthia K. Timms, via email: | ctimms@lockelord.com |
| Matthew H. Davis, via email: | mdavis@lockelord.com |
| Steven Shults, via email: | sshults@shultslaw.com |
| John T. Adams, via email: | jadams@shultslaw.com |

/s/ *Marc R. Stanley*
Marc R. Stanley